593 So.2d 351 (1992)
Theo H. HARVEY, Jr.
v.
DIXIE GRAPHICS, INC. and Touche Ross & Co.
No. 91-C-1382.
Supreme Court of Louisiana.
January 17, 1992.
*352 Robert Emmet Tarcza, New Orleans, for applicant.
H. Paul Simon and Charles C. Coffee, Simon, Peragine, Smith & Redfearn, New Orleans, for respondent.
DENNIS, Justice.
The issue is whether plaintiff's delictual action for damages resulting from an accountant's professional malpractice is prescribed. We must decide if the lower courts correctly held that the plaintiff suffered damage sufficient to commence the running of prescription over one year before filing suit, and that prescription was not suspended during the period that plaintiff defended himself against a third party's attack brought on by the alleged malpractice.
The trial court, on recommendation of its commissioner, held that the claim against the defendant accounting firm Touche Ross & Co. was prescribed, reasoning that plaintiff Theo Harvey had knowledge of his malpractice cause of action over one year in advance of filing suit. The court of appeal affirmed, finding that over one year before filing suit, Harvey became aware of actual and appreciable harm which he knew was brought on by the alleged malpractice of Touche Ross. It also concluded that the doctrine of contra non valentum did not apply to suspend the running of prescription during the time that Harvey defended Touche Ross' work product in proceedings by the IRS. Harvey v. Dixie Graphics, Inc., 580 So.2d 518 (La.App. 4th Cir.1991). We granted certiorari, 586 So.2d 545, in order to consider whether appreciable damage had occurred as of the time specified by the court of appeal. After reviewing the record and arguments of the parties, we conclude that the court of appeal's determinations were correct and should be affirmed.

*353 FACTS
Plaintiff Theo H. Harvey, Jr. sued the accounting firm of Touche Ross & Company for alleged negligence in preparing income tax returns for Harvey Press International (HPI). Harvey formerly owned HPI, and by agreement in June 1981 sold it to Dixie Graphics, Inc. Harvey then repurchased HPI in November 1982, and three days later sold it to Rebsamen Companies, Inc. While Dixie owned HPI, Dixie hired Touche Ross to prepare HPI's income tax return and other financial statements. According to the allegations of Harvey's petition, Touche Ross and Dixie negligently understated HPI's tax liability. Relying on the statements in the tax returns and other statements prepared by Touche Ross and approved by Dixie, Harvey reacquired HPI and sold it to Rebsamen with warranty. In July 1984, Rebsamen informed Harvey that the IRS was auditing HPI and was proposing adjustments which would result in greater tax liability. In November 1984 Harvey's own accountant and attorney met with the IRS agent at IRS regional offices in Nashville. The agent told them that the tax returns were prepared incorrectly. In October 1985 the IRS issued a "thirty day letter" proposing a deficiency of $157,438.00. According to the letter, the taxpayer must formally protest within 30 days to avoid a formal assessment. In December 1986, after negotiating with the IRS, Harvey, as Rebsamen's indemnitor under Harvey's sale agreement with Rebsamen, paid the IRS $91,542.00 in tax and $85,682 in interest, and paid legal and accounting fees of over $31,000.
Harvey filed this suit against Touche Ross and Dixie Graphics on June 15, 1987 alleging that the defendants are indebted in solido for the amounts Harvey paid in tax, interest and fees. Touche Ross filed a peremptory exception of prescription, which, after hearing, the trial court sustained. The court reasoned that the one-year prescriptive period of La.Civ.Code art. 3492 began to run in July 1984 when Harvey learned of the IRS audit and its proposal for adjustments. The Fourth Circuit Court of Appeal affirmed. It reasoned that the prescriptive period began in November 1984, because on that date Harvey was aware that the tax return prepared by Touche Ross was not approved by the IRS, was subject to serious dispute and that damage, at least to the extent of accountant and attorney fees, was inevitable. Harvey v. Dixie Graphics, Inc., 580 So.2d at 520. The court of appeal also concluded that contra non valentum did not suspend the running of prescription merely because the plaintiff would have been forced to take a position in a malpractice suit inconsistent with his position in the proceedings against him by the IRS. Id., at 521.

LAW
No contract ever existed between the plaintiff Harvey and the defendant accounting firm Touche Ross. Plaintiff's suit is for damages arising from the negligent act of the defendant. We will not answer the interesting question, not before us, as to whether the scope of a professional accountant's duty encompasses the risk of harm to a person not in privity with the accountant but who nevertheless relies on the accountant's work product and consequently suffers damages. See, e.g. Penalber v. Blount, 550 So.2d 577 (La.1989) and authorities cited therein; Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979); Restatement (Second) of Torts § 552. If such an action does exist, which we assume only for purposes of determining the question whether the claim is prescribed, the action is subject to the rules of prescription of tort actions.
At the time this suit arose, a delictual action for negligence in professional malpractice prescribed in one year, in the absence of more specific legislation. La.Civ. Code art. 3492; Braud v. New England Ins. Co., 576 So.2d 466 (La.1991); Rayne State Bank and Trust Company v. National Union Fire Insurance Co., 483 So.2d 987 (La.1986); Sciacca v. Polizzi, 403 So.2d 728 (La.1981); Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963); Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983), writ den. 431 So.2d 773; Carey v. Pannell, Kerr, Foster, 559 So.2d 867 (La.App. 4th Cir.1990). (Subsequently, *354 in 1990, a specific revised statute was added governing the liberative prescription of actions for professional accounting liability. See La. R.S. 9:5604 (1990). We decline to comment on whether this statute would apply to the action which we assume plaintiff has against the accountant with whom he is not in privity. We merely conclude that because the facts arose before the effective date of this statute, the statute can not apply. Lott v. Haley, 370 So.2d 521 (La.1979).)
Prescription of a delictual action begins to run from the date that injury or damage is sustained. La.Civ.Code art. 3492. This statute is rooted in the recognition that a prescriptive period is a time limitation on the exercise of a right of action, and a right of action in tort comes into being only when the plaintiff's right to be free of illegal damage has been violated. Baudry-Lacantinerie & Tissier, Prescription, 5 Civil Law Transl. § 384 at p. 204 (1972). When damages are not immediate, the action in damages thus is formed and begins to prescribe only when the tortious act actually produces damage and not on the day the act was committed. Id.
The damage suffered must at least be actual and appreciable in quality that is, determinable and not merely speculative. Braud v. New England Ins. Co., 576 So.2d 466 (La.1991). But there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action. Braud, supra; Rayne State Bank v. National Union Fire Insurance Co., 483 So.2d 987 (La.1986). Thus in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage, Rayne, supra; Braud, supra; Baudry Lacantinerie & Tissier, supra, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act. Rayne, supra.
In order to mitigate occasional harshness of the operation of the prescription statute our courts have implemented the jurisprudential principle of contra non valentum. This principle is based on the equitable notion that no one is required to exercise a right when it is impossible for him or her to do so. Rajnowski v. St. Patrick's Hospital, 564 So.2d 671 (La. 1990); Plaquemines Parish Commission Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054-1060 (La.1987). In the case in which a plaintiff is not aware of the damage suffered, see R.J. Reynolds Tobacco v. Hudson, 314 F.2d 776 (5th Cir. 1963), or is not aware that the damage suffered is the fault of the defendant, see Jordan v. Employee Transfer Co., 509 So.2d 420 (La.1987), contra non valentum has operated to suspend the running of prescription until such time as the plaintiff knew or reasonably should have known that his or her damages were the fault of the defendant's negligent act. Stone, Tort Doctrine, 12 Louisiana Civil Law Treatise § 120 (1977) at 167. The other general instances in which contra non valentum is recognized to apply are legal impossibility, existence of a condition coupled with a contract or the proceedings that prevent plaintiff from acting, and presence of an obstacle set up by the defendant. Rajnowski, supra; Plaquemines Parish Commission Council, supra.
To summarize the jurisprudential precepts explicated above, for prescription to begin to run under Article 3492, it must be shown that the plaintiff knew or reasonably should have known that he or she has suffered harm due to a tortious act of the defendant, unless one of the contra non valentum exceptions applies to delay further the commencement or to suspend the running of prescription.
Applying these precepts to the facts of this case, we affirm the lower courts' ultimate conclusions that the claim has prescribed. The court of appeal was not manifestly erroneous in concluding that prescription had begun to run by November 1984. Harvey knew of the accountant's negligence at that time because the IRS informed him of it through his attorney and his own accountant at the Nashville *355 meeting. He also sustained appreciable harm because he had incurred substantial accountant's and attorney's fees in investigating and informing himself of the deficiencies of the return Touche Ross had prepared. The mere fact that all of his damages were not yet suffered because he had not yet written a check to the IRS does not change the key fact that the plaintiff was certainly aware that he had suffered appreciable harm from the allegedly tortious act of Touche Ross. Because this action was filed more than one year after Harvey knowingly sustained appreciable damage due to the malpractice of the accounting firm, the suit is prescribed. La. Civ.Code art. 3492 (1983).
The plaintiff argues that some formal proceedings must have been initiated against him by the IRS before prescription can begin to run, citing Rayne State Bank v. National Union Fire Insurance Co., 483 So.2d 987 (La.1986); Braud v. New England Ins. Co., 576 So.2d 466 (La.1991). He urges that until formal assessment by the IRS, the plaintiff cannot sue because the extent of damages is unknown or uncertain. We disagree. The conclusions in Rayne and Braud, like the conclusions of the lower courts in this case, were reached after inquiry purely and simply as to whether actual damage was brought home to the plaintiffs before one year before filing suit, based on the facts and circumstances of each case. Neither Rayne nor Braud was an effort to find a fixed point in time at which damages were deemed to be certain. In Rayne, for example, we recognized that the amount of damages need not be known with certainty, pointing out that "the full extent of the damage was not yet known at th[e] time [suit was filed], [but] the fact that some damage would occur was known, since the bank had to defend against the attack." Rayne, supra at 996. Nor have we ever sought to establish that the date of "formal action" or of filing suit was in itself significant. In Braud the plaintiff argued that prescription had not commenced even when the third party filed suit attacking the work product of the defendant. We concluded that on the date of filing of the suit plaintiff had suffered "appreciable damage" sufficient to begin the running of prescription. There was no necessity to determine whether prescription had begun to run any earlier. In both those cases, it was the fact that the plaintiff was forced to incur expense to defend the tortfeasor's work product (knowing that the attack was caused by the tortfeasor's negligence) which led to the conclusion that the plaintiff had sustained damage and was expected to act upon his right within the prescriptive period. To make a rule for cases of negligent preparation of a tax return that prescription does not commence to run until formal assessment would require us to ignore Article 3492 and to discard the civilian principles we have developed thus far. The foreign cases cited to us which appear to set forth such a rule either dealt with state law which developed differently from our own or dealt with issues not presented in the present case, such as whether plaintiff had knowledge of the claim. See Mills v. Garlow, 768 P.2d 554 (Wyo.1989) and cases cited therein. Because our law provides a solution that is easily applicable to the facts of this case, we see no reason to resort to rules from foreign jurisdictions.
Plaintiff also argues that prescription was suspended during the time that he and the IRS were in adversarial positions, until he had settled with the IRS. Plaintiff urges that requiring him to formally allege in a lawsuit against Touche Ross that the return was defective while he was defending the same return as accurate in the proceedings with the IRS would set a bad public policy. However, litigants in Louisiana and in federal tax court are allowed to maintain alternative, inconsistent and even mutually exclusive positions in the course of litigation, La.Code Civ.Proc. art. 892; 26 U.S.C.A. 26 foll. § 7453, Rule 31(c) (West 1989 & Supp.1990). Harvey was not prevented from asserting inconsistent positions in the two actions, so contra non valentum did not operate to suspend the running of prescription. Braud, supra.

CONCLUSION
We therefore affirm, at plaintiff's cost, the judgment of the court of appeal which *356 affirmed the trial court's granting of Touche Ross and Company's peremptory exception of prescription.
JUDGMENT OF COURT OF APPEAL AFFIRMING, AT PLAINTIFF'S COST, THE TRIAL COURT'S GRANTING OF DEFENDANT TOUCHE ROSS AND COMPANY'S PEREMPTORY EXCEPTION OF PRESCRIPTION AFFIRMED. TOUCHE ROSS AND COMPANY IS DISMISSED AT PLAINTIFF'S COST.
LEMMON, J., concurs and will assign reasons.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
The majority holds that a taxpayer's claim for an accountant's malpractice prescribed while the taxpayer was negotiating with the IRS about his tax deficiency. Taxpayer Harvey did not sustain actual harm from his accountant's negligence until he compromised his claim with the IRS in 1986. It is unconscionable to require Harvey to file suit against his accountant while simultaneously defending the accountant's return before the IRS.
The great majority of other jurisdictions hold that prescription does not begin to run on a malpractice action against an accountant based on federal tax work until there is a statutory notice of deficiency. See, for example, Mills v. Garlow, 768 P.2d 554 (Wyo.1989); Streib v. Veigel, 109 Idaho 174, 706 P.2d 63 (1985); Chisholm v. Scott, 86 N.M. 707, 526 P.2d 1300 (1974); Atkins v. Crosland, 417 S.W.2d 150 (Texas 1967); Feldman v. Granger, 255 Md. 288, 257 A.2d 421 (1969); Leonhart v. Atkinson, 265 Md. 219, 289 A.2d 1 (1972); Isaacson, Stolper & Co. v. Artisan's Savings Bank, 330 A.2d 130 (Del.1974); Wynn v. Estate of Holmes, 815 P.2d 1231 (Okla.1991) and Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990). The analysis of IRS procedures in Mills v. Garlow shows that the prescriptive period should not commence until the IRS issues a notice of deficiency or compromises the claim with the taxpayer:
Certain federal tax returns are selected for examination or audit, and the examination is generally done by examiners in the district offices of the IRS. 20 Fed. Proc., L.Ed., Internal Revenue § 48:305 (1983). At the conclusion of the examination, the taxpayer is sent a report of the examiner's findings, indicating any proposed adjustments in tax liability. Id. at § 48:389. At this point the taxpayer is given the opportunity to agree with the findings of the examiner by signing a form agreement (form 870) or, alternatively, the taxpayer is informed of his appeal rights if he does not agree. Id. If the taxpayer signs the agreement form, he thereby waives the required statutory notice of deficiency pursuant to 26 U.S.C. § 6212 (1982) (the ninety-day letter) and the corresponding prohibition on collection for ninety days under 26 U.S.C. § 6213 (1982), and the taxpayer is precluded from litigating the proposed deficiency in Tax Court. J. Chommie, Federal Income Taxation § 295 (2d ed. 1973). If the taxpayer does not agree with the examiner's proposed findings, the findings will be reviewed in the district office, and the taxpayer will be sent a "30-day letter" instructing him that he has thirty days to file a protest. 20 Fed.Proc., supra at § 48:392. If the taxpayer fails to respond within the thirty days, a notice of deficiency will be issued. Id. at § 48:393. If the taxpayer timely files a protest, he will be accorded an appeals office conference. Id. at §§ 48:392 and 48:406. The appeals office has broader negotiation and settlement authority than does the district office. Id. at §§ 48:401 and 48:411. If a settlement is reached, the taxpayer will again be requested to sign the agreement form 870. Id. at § 48:412. A determination by the appeals office, however, is final insofar as the taxpayer's appeal rights within the IRS, and if the taxpayer continues to disagree, the statutory notice of deficiency will be sent giving the taxpayer ninety days to file a petition in the Tax Court before collection actions are begun. Id. at §§ 48:440 and 48:463. See also J. Chommie, supra at § 295, for an overview of the described procedure.

*357 Thus, it can be seen that the preliminary findings of the examiner are merely proposed findings, subject to review and negotiation prior to any determination of a deficiency, unless the taxpayer agrees with such findings or fails to pursue the internal review provided by the IRS. An agreement by the taxpayer with the proposed adjustment at any point in this procedure results in a binding determination of tax liability upon which enforcement actions may immediately commence and precludes the necessity for the statutory notice of deficiency. It would seem, therefore, given the provisional nature of the examining officer's proposed deficiency, that a reasonable taxpayer would not know or have reason to know that he had a cause of action against his accountant until such time as the notice of deficiency issues or, alternatively, when the taxpayer has indicated his agreement with the IRS. We conclude that IRS procedures support a policy of starting the statute of limitations at the time of the statutory notice of deficiency or, in the alternative, at the equivalent time of taxpayer agreement with the IRS, precluding the otherwise required notice. 768 P.2d at 556, 557.
In view of Louisiana's short prescriptive period, commencing that period at the first indication of negligence is wrong. Harvey did not sustain actual injury or damage until he compromised his claim with the IRS in 1986. LSA-C.C. art. 3492.
I respectfully dissent.