616 So.2d 657 (1993)
Josephine BOUTERIE
v.
Barbara A. CRANE, and the City of Kenner Police Department.
No. 92-C-2994.
Supreme Court of Louisiana.
April 12, 1993.
Louis B. Merhige, New Orleans, for applicant.
Francis L. Morris, Metairie, and Ansardi, Maxwell, & Power, James D. Maxwell, and Dorothy A. Pendergast, Kenner, for respondent.
John Villars, Baus, Jr. and David Scranton Daly, Metairie, for William F. Wessel, Victoria L. Bartels, New England Ins. Co., amicus curiae.
ORTIQUE, Justice[1].
In this civil suit for sexual abuse of a minor, writ was granted to determine whether the one year prescriptive period of LSA-C.C. art. 3492[2] was suspended during the period in which the legal custody of the unemancipated minor was adjudicated to the State of Louisiana. The trial court sustained the defendants' peremptory exception raising the objection of prescription and the appellate court affirmed. We find that, due to a hiatus in the law, uncertainty exists as to who had the responsibility and procedural capacity to represent the unemancipated minor in suit since the minor's natural father was an absentee, her natural mother temporarily lost legal custody, her legal custody was adjudicated to the State and her physical custody was placed with her aunt. The hiatus jeopardized the unemancipated minor's right to sue by failing to identify the proper plaintiff, i.e., the adult with procedural capacity to file suit on her behalf, and was tantamount to a condition which prevented her from proceeding with her suit. Therefore, since suspension of prescription does not prejudice defendants, equity demands that prescription be suspended during the period legal custody of the unemancipated minor was adjudicated to the State. The judgment sustaining the exception is reversed and the case is remanded.

*658 I.
Josephine Bouterie ("Bouterie") filed this suit for damages against Barbara A. Crane ("Crane"), her former neighbor, and Crane's former employer the Kenner Police Department ("KPD") on December 19, 1986, four months after she attained majority and was released from the custody of the State of Louisiana, the Department of Health and Human Resources (DHHR), now the Department of Social Services ("DSS"). She claims she was sexually abused by Crane for a two year period ending on June 5, 1985, the date when Crane was arrested for contributing to the delinquency of a juvenile and for indecent behavior with a juvenile.
Discovery produced DHHR reports and psychological evaluations of Bouterie which the juvenile court considered prior to adjudicating her temporary legal custody to the State and continued physical custody with her aunt. Those documents indicated that Bouterie was on probation as a child in need of supervision ("CINS") when Crane was arrested and that Bouterie's mother wanted her placed in a home. Results of a psychiatric consultation described that Bouterie came from a "chaotic background" where her father left home when she was age three, after threatening her mother's life on multiple occasions. It also stated that after she confirmed that Bouterie was homosexually involved with "a next door neighbor police woman," Bouterie's mother beat her up. The psychiatrist "hypothesized that [Bouterie] was dissatisfied with the mothering which she got from her mother and turned to another woman to get mothering. That attempt turned into a homosexual relationship. The mother's rage then reflects her own jealousy and sense of inadequacy in mothering." Thereafter, the Juvenile Court for the Parish of Jefferson adjudicated Bouterie a CINS and placed her in the legal custody of the DHHR from August 21, 1985, until her eighteenth birthday on August 19, 1986. Case no. 84-JU-738.
Crane and KPD filed a peremptory exception objecting that Bouterie's petition had prescribed on June 5, 1986 under the one year prescriptive period for delictual actions. LSA-C.C. arts. 3492, 3468.[3] Bouterie's opposition urged the court to use equity to suspend prescription for the period in which she was in the legal custody of the DHHR, citing Kozlowski v. State, through Dept. of Health & Human Resources, 534 So.2d 1260 (La.App. 5th Cir.1988), writ den., 538 So.2d 592 (La.1989)[4]. LSA-C.C. art. 4; LSA-C.C.P. art. 683.[5] *659 The trial court sustained the exception and dismissed Bouterie's suit. Its reasons for judgment distinguished Kozlowski, finding it suspended prescription on a minor's action against the DHHR while the minor was in the DHHR's custody, but did not suspend prescription on a claim against a non-custodial third-party. Moreover, the trial court indicated Kozlowski implies the DHHR has the authority and the responsibility to file suit on behalf of children in its legal custody.[6]
The appellate court affirmed. Bouterie v. Crane, 604 So.2d 1051 (La.App. 5th Cir.1992). It reasoned that although Bouterie's mother had residual parental rights when her daughter was adjudicated to the legal custody of the DHHR, under Kozlowski those rights did not give her capacity to sue. 604 So.2d at 1053. It stated that Kozlowski held prescription was suspended by contra non valentem[7] while the minor was in the custody of the DHHR because the DHHR was a party defendant. Thus, it distinguished Kozlowski since Crane and KPD were not Bouterie's legal custodians, and Kozlowski was based in part on the retroactive application of an amendment made to LSA-C.C. art. 3469[8] regarding caretakers. It noted the DHHR's policy manual did not indicate a policy against instituting civil suits on behalf of minors in its legal custody.
On Bouterie's application, we granted certiorari to decide whether prescription was suspended while she was in the legal custody of the DHHR by virtue of her minority combined with the adjudication of custody. Bouterie v. Crane, 610 So.2d 807 (La.1993).

II.
Although an unemancipated minor might have a right of action against a tortfeasor to recover for injuries, the unemancipated minor does not have the procedural capacity to sue. LSA-C.C.P. art. 683 (see n. 4, supra); Garrett v. Earnest, 376 So.2d 623 (La.App. 4th Cir.1979). In order to overcome a dilatory exception objecting to lack of procedural capacity, an appropriate party plaintiff must file suit on the minor's behalf. See LSA-C.C.P. art. 926; Id.; Scott v. Jack's Cookie Co., 413 So.2d 1334 (La.App. 1st Cir.1982). Nonetheless, prescription runs against minors unless an exception is established by legislation. LSA-C.C. arts. 3467, 3468.
*660 The one year liberative prescriptive period for delictual action begins to run from the date the injury or damage is sustained. LSA-C.C. art. 3492. This statute is rooted in the recognition that a prescriptive period is a time limitation on the exercise of a right of action, and a right of action in tort comes into being only when the plaintiff's right to be free of illegal damage has been violated. Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La.1992), citing Baudry-Lacantinerie & Tissier, Prescription, 5 Civil Law Transl. § 384, p. 204 (1972). This prescription statute, like all others, is strictly construed against prescription and in favor of the obligation sought to be extinguished by it. Lima v. Schmidt, 595 So.2d 624 (La.1992); Foster v. Breaux, 263 La. 1112, 270 So.2d 526 (1972); Knecht v. Board of Trustees for Colleges and Universities, 525 So.2d 250 (La.App. 1st Cir.1988), writ den., 530 So.2d 87 (La.1988).
When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed. Lima v. Schmidt, supra. The plaintiff has three theories upon which he may rely to establish prescription has not run: suspension, interruption and renunciation. Id. The theory pertinent to this suit is the suspensive theory of contra non valentem, which means that prescription does not run against one who could not bring his suit. See Id.
Contra non valentem was created by jurisprudence to soften the occasional harshness of prescription statutes. Id.; Harvey v. Dixie Graphics, Inc., supra; Plaquemines Parish Com'n Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054 (La.1987). Admittedly, the theory is contrary to the express provisions of the Civil Code, namely LSA-C.C. art. 3467. Plaquemines Parish Com'n Council v. Delta Development Co., Inc., supra. However, the principles of equity and justice, which form the mainstay of the doctrine, demand that under certain circumstances prescription be suspended because plaintiff was effectually prevented from enforcing his rights for reasons external to his own will. See Id.; Corsey v. State, through Dept. of Corrections, 375 So.2d 1319 (La.1979).
Contra non valentem generally operates to suspend the running of prescription until the time plaintiff knows or should reasonably know that his or her damages were the fault of defendant's negligent act. However, it is also recognized to apply when a legal impossibility exists, when a condition coupled with a contract or other proceeding prevents plaintiff from acting, and when an obstacle set up by the defendant exists. Harvey v. Dixie Graphics, Inc., supra; Plaquemines Parish Com'n Council v. Delta Development Co., Inc., supra; Corsey v. State, through Dept. of Corrections, supra. Prescription commences to run again when the period of suspension terminates. LSA-C.C. art. 3472.

III.
Crane and KPD contend that while Bouterie was in the custody of the DHHR three persons could have instituted suit on her behalf: the DHHR, as her legal custodian; her mother, pursuant to her residual parental rights; and her aunt, as her physical custodian.
Based on the definition of "parent" as set forth in LSA-C.J.P. art. 13(11)[9], repealed *661 by Acts 1991, No. 235, § 17, effective January 1, 1992, defendants assert the DHHR and/or the aunt became Bouterie's "parent" for legal purposes and were vested with parental duties and responsibilities, including the procedural capacity to file suit on her behalf. However, article 13, which furnishes a list of definitions for the former Code of Juvenile Procedure, does not validate this theory. Its preface directs that the definitions it provides are distinctive to that Code and therefore have a limited scope. By its own terms, the operation of the definition of "parent" in article 13(11) is restricted to the former Code of Juvenile Procedure and is not germane to the interpretation of provisions of the Civil Code or the Code of Civil Procedure.
Crane and KPD's second contention is Bouterie's mother never lost her capacity to file suit based upon the residual parental rights she retained following her loss of legal custody, citing LSA-R.S. 13:1569(11)[10] and 13:1600(5)[11], repealed by Acts 1991, No. 235, § 17, effective January 1, 1992. They urge that the DHHR's rights arising from its legal custody of Bouterie were subject to the mother's residual rights.[12]
The phrase "residual parental rights" is found in the definition of the term "legal custody" as that term was used in the general provisions of the revised statutes applicable to juvenile courts. LSA-R.S. 13:1569(11) defined "legal custody" and listed the rights and duties of the legal custodian but stated they were, "subject to the powers, rights, and duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities." A definition of the phrase "residual parental rights" was not contained in LSA-R.S. 13:1569. However, it was defined in LSA-R.S. 13:1600, which contained definitions for the use of the Jefferson Parish Juvenile Courts. LSA-R.S. 13:1600(5). Nonetheless, the definition did not promote defendants' contention, as the capacity to sue on behalf of the minor was not specifically included among its non-exclusive list of legal rights.
As the definition of "legal custody" in LSA-R.S. 13:1569(11) also manifests that the rights and duties vested in the legal custodian are subject to the powers, rights, *662 duties and responsibilities of the "guardian of the person of the child," Crane and KPD's third claim is Bouterie's aunt, as her physical custodian, had capacity to sue for Bouterie. They claim the aunt had "guardianship of the person of a minor" as defined by LSA-R.S. 13:1569(12)[13] and, therefore, had express statutory authority to represent Bouterie in legal actions. The language used in the definition in subpart (b), LSA-R.S. 13:1569(12)(b), does not compel that conclusion. By granting the guardian the right of visitation, it implies the "guardianship of the person of a minor" is not synonymous to and is not the same person as the minor's physical custodian.
The limiting language in subpart (c), LSA-R.S. 13:1569(12)(c), further implies that "guardianship of the person of the minor" and its authority to represent the minor in legal actions, is not characteristic to the legal custody of the minor vested in the DHHR. Kozlowski v. State, through Dept. of HHR, supra (dissent).

IV.
Bouterie contends that contra non valentem suspended prescription for the period she was in the custody of the DHHR because she lacked procedural capacity to sue in her own right and the law was ambiguous, not clearly instructing who was responsible for the preservation and enforcement of her litigious rights. She contends that the ambiguity in the law effectually prevented her from enforcing her rights for reasons external to her own will. Her claim does not squarely fit into any one of the four general contra non valentem situations, but it is closely analogous to the category which suspends prescription when "there was some conditions coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting." See Corsey v. State, through Dept. of Corrections, 375 So.2d at 1321-1322. Due to her minority coupled with her adjudication to the DHHR, and the failure of statutory law to affirmatively indicate the minor's proper representative, equity demands the harshness of prescription should be suspended in this suit for damages for the sexual abuse of a minor through the period she was in the legal custody of the DHHR.
LSA-C.C.P. art. 683, which mandates that an unemancipated minor lacks the procedural capacity to sue, presumes the unemancipated minor is under the "paternal authority" of both natural parents or of one parent who is natural tutor/tutrix, or is before a court which appoints a tutor to safeguard his or her legal rights. See Kozlowski v. State, through Dept. of HHR, 534 So.2d at 1263-1264; LSA-C.C. art. 246 et seq.; LSA-C.C.P. art. 4031 et seq. However, upon Bouterie's adjudication to the legal custody of the DHHR, neither her mother, the DHHR, nor her aunt was affirmatively or presumptively responsible within the meaning of LSA-C.C.P. art. 683 to enforce her litigious rights. Statutory law was deficient, not clearly providing her with a proper plaintiff to represent her. *663 Thus, reality diverged from the legal presumption of LSA-C.C.P. art. 683.
The Civil Code reflects a concept of the family unit where parents within the marriage possess broad parental authority over their minor children. Cf. LSA-C.C. arts. 215 et seq., 219, 221, 235; LSA-C.C.P. arts. 683(C), 4501, 4502. This includes the right to appear in court for the minor children. LSA-C.C. art. 235. Dissolution of this parental authority in all its aspects occurs, upon death of a parent, or their judicial separation or divorce. LSA-C.C. art. 221; LSA-C.C.P. art. 683(2); Griffith v. Roy, 263 La. 712, 269 So.2d 217 (1972).
Parental authority is distinct from custody and tutorship. Griffith v. Roy, supra. While tutorship is inclusive of custody in most instances, a custody award in connection with separation and divorce proceedings does not include appointment of a tutor, nor does it institute the regime of tutorship. Griffith v. Roy, supra (appendix) (emphasis in the original). After judicial separation, divorce or the death of a parent, the custodial parent is by right the natural tutor of the minor. See LSA-C.C. arts. 246, 248, 250; Griffith v. Roy, supra (appendix). The right, however, is inchoate and not in existence until the custodial parent is qualified by taking an oath. LSA-C.C. art. 248. See LSA-C.C.P. art. 4061; Griffith v. Roy, supra (appendix). Herein, by the juvenile court's judgment of August 21, 1985, Bouterie's mother lost the rights and responsibilities she possessed as a custodial parent, including her inchoate right of natural tutrix. Consequently, it could not be presumed that she was the proper plaintiff to qualify as tutrix to represent Bouterie.
None of the agents or employees of the DHHR had the responsibility or the authority to institute civil suits and/or secure tutors to represent the minors in its legal custody, even though such conduct was not prohibited by the DHHR's policy manual. See affidavit of Sherry Watters; Department of Social Services, Division of Children, Youth, and Family Services Program Policy Manual. As a social services agency, the DHHR lacks the authority, the personnel and the expertise to evaluate and institute lawsuits for the minors adjudicated to its legal custody. Thus, it is unrealistic to presume that a DHHR employee had procedural capacity to institute this action on Bouterie's behalf.
Similarly, although Bouterie's aunt might have qualified as tutrix, she had no affirmative duty to institute this suit or proceedings for the appointment of a tutor for her niece. See LSA-C.C. arts. 263, 270; LSA-C.C.P. arts. 4061 et seq., 4131, 4231; but see LSA-C.C. art. 308. Thus, there was no person definitively responsible to Bouterie or presumptively responsible under the law, to preserve and enforce her litigious rights. This conclusion is fitting despite the provisions of former LSA-R.S. 13:1569(12)(a), which gave the right to represent minors in legal actions to the person having "guardianship of the person of the minor," because the definition seemingly refers to the person already appointed tutor or tutrix. Cf. Kozlowski v. State, through Dept. of HHR, supra; see LSA-C.C. art. 4031 et seq.

V.
Minors are special wards of the court. As such, courts keep a watchful eye over them to prevent their being prejudiced by the failure of their appointed representatives to vigilantly guard their interests. See LSA-C.C.P. art. 4271; Johnson v. Ford Motor Co., 707 F.2d 189 (5th Cir.1983); Tutorship of Vines, 331 So.2d 894 (La.App.2d Cir.1976). A fortiori, the courts guard the interests of minors who are wards of the state, as they are generally without representatives to protect their best interests.
Due to the hiatus in the law, when the DHHR assumed legal custody of Bouterie, her action against defendants was jeopardized because the adjudication left her without a definitive legal representative. This seemingly unprovided for contingency endangered her right of due process access to courts, LSA-Const. Art. 1, § 22, and constituted a condition which prevented her from proceeding with her suit. The equitable doctrine of contra non valentem was *664 judicially developed to suspend prescription in situations of this kind.
Crane and KPD were legally charged with knowledge of her lack of procedural capacity due to minority. Bouterie filed suit four months after she reached majority, five and one-half months after the one year prescriptive period lapsed, within a year of Crane's guilty plea to the charge of indecent behavior with a juvenile, and four months after Crane was sentenced. Thus, due to the combination of notable subject matter and the relatively brief lapse of time, defendants were not prejudiced by the passage of time dimming the memory of witnesses, destroying evidence, or creating an undue burden on them to prepare their defense and reconstruct the facts from a distant past.[14] See Corsey v. State Dept. of Corrections, 375 So.2d at 1327 (dissent). Under the facts of this case, suspending prescription does not unfairly prejudice defendants.
Prescription was suspended on August 21, 1985 and did not commence to run again until August 19, 1986. The filing of Bouterie's suit on December 19, 1986 was, therefore, timely. Bouterie met her burden of showing her claim had not prescribed. Accordingly, the lower courts erred in their rulings on the peremptory exception of prescription.[15]

DECREE
For the reasons assigned, the judgment sustaining the exception is reversed and the case is remanded for further proceedings. Costs are assessed against defendant/respondents.
REVERSED AND REMANDED.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3. Marcus, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[2] LSA-C.C. art. 3492 provides in pertinent part:

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained ...
[3] LSA-C.C. art. 3468 provides:

Prescription runs against absent persons and incompetents, including minors and interdicts, unless exception is established by legislation.
[4] The five judge panel that decided Kozlowski stated it adhered to the views expressed in the three judge panel (2-1) decision. It declared its original decision had been solidified by the 1988 amendments to LSA-C.C. art. 3469. See n. 15, infra. The case involved an action filed by a father on behalf of his minor son against the DHHR and a sheriff's department for negligence in failing to protect the infant from its mother who placed him in scalding water. Prior to the time the child was injured, the father moved out of the family home and reported his suspicions of child abuse to the DHHR and the sheriff's department. After he was burned, the child was placed in the temporary legal and physical custody of the DHHR (11/08/83). The father regained legal and physical custody of the child on 12/30/85 and filed suit on 8/18/86. The trial court sustained defendants' peremptory exception of prescription. On appellate review, the three judge panel voted to reverse (2-1), finding that the circumstances did not squarely fall within the purview of LSA-C.C.P. art. 683 and that Louisiana law does not expressly answer the question of who is the proper representative for a minor in an action when the DHHR has legal custody of the minor. Therefore, it applied reason and equity, LSA-C.C. art. 4, and suspended the running of prescription against both defendants because the DHHR was a defendant. By analogy, it applied the pre-amendment provisions of LSA-C.C. art. 3469. The five judge panel reversed in part, amended in part and remanded. It limited the suspension of prescription to the DHHR under amended LSA-C.C. art. 3469, but did not suspend prescription as to the sheriff's department.
[5] LSA-C.C. art. 4 provides:

When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made justice, reason, and prevailing usages.
LSA-C.C.P. art. 683, as amended by Acts 1992, No. 106, § 1,* provides:
A. An unemancipated minor does not have procedural capacity to sue.
B. Except as otherwise provided in Article 4431, the tutor appointed by a court of this state is the proper plaintiff to sue to enforce a right of an unemancipated minor, when one or both of the parents are dead, the parents are divorced or judicially separated, or the minor is an illegitimate child.
C. The father, as administrator of the estate of his minor child, is the proper plaintiff to sue to enforce a right of an unemancipated minor who is the legitimate issue of living parents who are not divorced or judicially separated. The mother, as administratrix of the estate of her minor child, is the proper plaintiff in such an action, when the father is mentally incompetent, committed, interdicted, imprisoned, or an absentee. Moreover, with permission of the judge, the mother may represent the minor whenever the father fails or refuses to do so.
* The 1992 amendment made minor changes to the second sentence of the third paragraph and added the third sentence to the same paragraph relating to representation of the minor by the mother when the father fails or refuses to serve.
[6] The Kozlowski court stated:

In view of the legally defined status of the defendant DHHR as the "parent" of the minor when the minor is adjudicated to its legal and physical custody, LSA-C.J.P. art. 13(11), and in view of the particular facts of this case, we feel it as reasonable here, that the defendant DHHR had, at least, a like responsibility to have instituted the minor's action for tortious injury. 534 So.2d at 1265.
Other than referencing LSA-C.J.P. art. 13(11) and the factual demands of the case, the Kozlowski court provided no further authority for finding the DHHR responsible for instituting suit on behalf of the unemancipated minor while he was in its legal and physical custody.
[7] Contra non valentem is an equitable doctrine for the suspension of prescription, adopted by this court in Corsey v. State, through Dept. of Corrections, 375 So.2d 1319 (La.1979). It is discussed in Section II of this opinion, infra.
[8] LSA-C.C. art. 3469, as amended by Acts 1988, No. 676, § 1, provides:

Prescription is suspended as between: the spouses during marriage, parents and children during minority, tutors and minors during tutorship, and curators and interdicts during interdiction, and caretakers and minors during minority.
A "caretaker" means a person legally obligated to provide or secure adequate care for a child, including a tutor, guardian or legal custodian.
[9] LSA-C.J.P. art. 13(11) provided:

Art. 13. Definitions
Except where the context clearly indicates otherwise, as used in this Code:
* * * * * *
(11) "Parent" means either parent if they are married and living together. If one parent is dead, or if the parents are divorced, legally separated, separated in fact, or unmarried, it means a parent or person having legal or actual custody of the child. If no parent has legal or actual custody, it means the person, institution, agency, or association of persons having actual or legal custody. (emphasis added)
In comparison, the Louisiana Children's Code, enacted by Acts 1991, No. 235, effective January 1, 1992, defines "parent" as follows:
Art. 116. Definitions
Except where the context clearly indicates otherwise, these definitions apply for the following terms used throughout this Code.
* * * * * *
(17) "Parent" means any living person who is presumed to be a parent under Civil Code Articles 184 through 190, a biological or adoptive mother or father of a child. (emphasis added)
[10] § 1569. Definitions

When used in this Part, unless the context otherwise requires:
* * * * * *
11. "Legal custody" means a legal status created by a court order which vests in a custodian the right to have physical custody of the child or minor and to determine, where and with whom he shall live within or without the state, and the right and duty to protect, train and discipline him and to provide him with food, shelter, education and ordinary medical care, all subject to the powers, rights, and duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities; provided that when the state of Louisiana is the party whom custody is given, the state may authorize necessary medical treatment and/or emergency major medical treatment, if the attending physician certifies that the medical care is necessary to treat the health problem or it is an emergency medical situation. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by the court. (emphasis added)
[11] § 1600. Definitions

* * * * * *
(5) "Residual parental rights" are those rights and responsibilities remaining with the parents after the legal transfer of custody of the child, including but not limited to right of visitation, consent to adoption, the right to determine religious affiliation, responsibility of support, and the right of inheritance from said child. The said child and his lawful descendants is relieved of all their legal rights with regard to the parent or other relatives except the right of inheritance.
[12] The right to sue on behalf of a minor is not one of the enumerated rights or duties in the definition of "legal custody." LSA-R.S. 13:1569(11). Crane and KPD do not claim the definition authorized the DHHR as legal custodian to represent Bouterie in legal actions.
[13] § 1569. Definitions

When used in this Part, unless the context otherwise requires:
* * * * * *
12. "Guardianship of the person of the minor" means the duty and authority to make important decisions in matters having a permanent effect on the life and development of the minor and to be concerned about his general welfare. It shall include but shall not necessarily be limited to:
a. the authority to consent to marriage, to enlistment in the armed forces of the United States, or to major medical, psychiatric, and surgical treatment, to represent the minor in legal actions, to make other decisions of substantial legal significance concerning the minor;
b. the authority and duty of reasonable visitation, except to the extent that such a right of visitation has been limited by court order;
c. the rights and responsibilities of legal custody when guardianship of the person is exercised by the natural or adoptive parent, except where legal custody has been vested in another individual, agency, or institution;
d. the authority to consent to the adoption of the child and to make any other decisions concerning him which his parents could make, when the rights of his parents or only living parent, have been judicially terminated as provided in the statutes governing termination of parental rights to facilitate adoption, or when both of his legal parents are deceased.
(emphasis added.)
[14] In his dissent to Corsey, Summers, C.J., focussed on these objections and voiced his concern that suspension disrupted the high degree of certainty provided by the law of prescription. We recognize the importance of his concerns but, nonetheless, decline to blindly adhere to them. While not universally applicable to all juveniles in custody of the DHHR, contra non valentem is applicable to this intentional tort action.
[15] LSA-C.C. art. 3496.1 was amended in 1992 to extend to three years the liberative prescriptive period against a person for abuse of a minor. Bouterie can not benefit from the 1992 amendment because it could not operate retroactively to revive an already prescribed cause of action. Hall v. Hall, 516 So.2d 119 (La.1987); Small v. Avoyelles Parish Police Jury, 589 So.2d 1132, n. 1 (La.App. 3d Cir.1991), writ den., 593 So.2d 374 (La.1992).

LSA-C.C. art. 3496.1, as amended by Acts 1992, No. 322, § 1:
An action against a person for abuse of a minor is subject to a liberative prescriptive period of three years. This prescription commences to run from the day the minor attains majority, and this prescription for all purposes, shall be suspended until the minor reaches the age of majority. This prescriptive period shall be subject to any exception of peremption provided by law.