656 So.2d 5 (1995)
Jane DOE, Plaintiff-Appellant,
v.
The ROMAN CATHOLIC CHURCH, et al., Defendants-Appellees.
No. 94-1476.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1995.
Rehearing Denied July 11, 1995.
*6 Richard Lynn Ducote, New Orleans, for Jane Doe.
Bob F. Wright, Lafayette, for The Roman Catholic Church, et al.
Franklin White Dawkins, Lafayette, for Father Aldeo Gilbert.
Before KNOLL, COOKS and PETERS, JJ.
COOKS, Judge.
Plaintiff-Appellant, Jane Doe, appeals the trial court's judgment sustaining the defendants' Exception of Prescription. We affirm.

FACTS
Appellant in her original petition, filed December 4, 1992, alleged physical, psychological, sexual and emotional abuse on the part of Father Aldeo Gilbert, who was a priest for the Diocese of Lafayette, and "other accomplices/agents for which he had supervisory responsibility," from 1954 to 1968. The Roman Catholic Church, Father Gilbert and the Roman Catholic Church for the Diocese of Lafayette were named as defendants. By amended petition, appellant specifically alleged *7 a single incident of "homosexual rape" in 1961, when she was 15 years old.
The following damages were sought: a) Mental and physical pain and suffering, past, present and future; b) medical and psychological expenses, past, present and future; c) loss of income; and d) impairment of earning capacity.
Defendants filed an exception of prescription, arguing the prescriptive period expired as of September 9, 1968, one year after plaintiff attained the age of majority. In the district court, appellant sought to invoke the doctrine of contra non valentem citing the holding of the Louisiana Supreme Court in Corsey v. State, Department of Corrections, 375 So.2d 1319 (La.1979). Specifically, appellant argued her recently "recollected memory" is a classic case where the doctrine of contra non valentem must be applied to overrule the exception of prescription. To support this contention, the following arguments were advanced below:
1. Although Louisiana courts have not yet fully addressed the specific question of whether prescription is suspended when all memories of sexual abuse are repressed, numerous other states have tolled their statutes of limitation under such circumstances and have allowed the adult survivor's litigation to go forward despite the length of the phenomenon of suppressed memories in cases of childhood sexual abuse;
2. Louisiana courts have, in similar abuse situations, utilized the court's equity discretion to overrule the exception of prescription and allow the plaintiff to proceed with her claim;
3. Overruling the exception of prescription will not place undue prejudice on the defendants, since Gilbert's activities have been known to the Diocese for decades yet the Diocese took no effective action against Gilbert;
4. There is no danger of false claims in this action, due to the large array of religious figures, teachers, public servants, and law enforcement officers that can corroborate the victim's claims; and
5. Gilbert utilized a variety of physical, psychological, spiritual, etc. coercive measures to effectively prevent the plaintiff from availing herself of her cause of action.
A hearing was held on the exception of prescription on April 11, 1994. The trial judge, in oral reasons for judgment, concluded
"the tort that is the subject of this litigation is a component part of a pattern of conduct that [plaintiff] clearly remembers and never suppressed. This plaintiff was not unable to act. She chose not to act."
Therefore, the trial court sustained the exception of prescription. This appeal followed. Plaintiff contends the trial court erred in sustaining the exception of prescription. Defendants answered the appeal asserting the trial court erred in splitting court costs. Defendants also asked for frivolous appeal damages.

PRESCRIPTION
Louisiana Civil Code article 3492 provides a one year liberative prescriptive period within which a delictual action must be brought. This prescription statute, like all others, is strictly construed against prescription and in favor of the obligation sought to be extinguished by it. Wimberly v. Gatch, 93-2361 (La. 4/11/94), 635 So.2d 206; Bouterie v. Crane, 616 So.2d 657 (La.1993). Prescription commences to run not necessarily on the date the injury occurs or the damage is sustained, but from the date the affected individual knows or should have known of the injury or damage sustained. Bock v. Harmon, 526 So.2d 292 (La.App. 3d Cir.), writ denied, 531 So.2d 275 (La.1988); Dixon v. Roque, 503 So.2d 659 (La.App. 3d Cir.1987).
When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed. Wimberly, supra. Three theories may be relied upon: suspension, interruption or renunciation. Bouterie, supra. Plaintiff relies on the suspensive theory of contra non valentem agere nulla currit prascriptio, which translated in English reads "prescription does not run against a party unable to act."
*8 The Louisiana Supreme Court in Wimberly v. Gatch, supra. at p. 211, discussed the doctrine of contra non valentem and stated:
The courts created the doctrine of contra non valentem, as an exception to the general rules of prescription. Hillman v. Akins, 631 So.2d 1 (La.1994); Bouterie v. Crane, supra; Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992); Plaquemines Parish Com'n Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054 (La.1987). The doctrine is contrary to the express provisions of the Civil Code. See LSA-C.C. art. 3467; Bouterie v. Crane, supra; Plaquemines Parish Com'n Council v. Delta Development Co., Inc., supra. The principles of equity and justice which form the mainstay of the doctrine, however, demand that under certain circumstances, prescription be suspended because plaintiff was effectually prevented from enforcing his rights for reasons external to his own will. Bouterie v. Crane, supra; see Plaquemines Parish Com'n Council v. Delta Development Co., Inc., supra.; Corsey v. State, through Dept. of Corrections, 375 So.2d 1319 (La.1979).
Generally, the doctrine of contra non valentem suspends prescription where the circumstances of the case fall into one of the following four categories:
1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

Rajnowski v. St. Patrick's Hospital, 564 So.2d 671, 674 (La.1990); Whitnell v. Menville, 540 So.2d 304 (La.1989); Plaquemines Parish Com'n Council v. Delta Development Co., Inc., supra.; Corsey v. State, through Dept. of Corrections, 375 So.2d at 1321-1322; but see Bouterie v. Crane, supra [Bouterie's claim did not squarely fit into any of these 4 categories but was closely analogous to the second category; therefore prescription was suspended.].
In Corsey, supra., the contra non valentem doctrine was applied where the injuries incurred by the plaintiff through the defendant's negligence, so incapacitated the plaintiff he lacked any understanding of what had happened to him until less than one year prior to filing suit, when he recovered his awareness of both the events and his condition. Plaintiff sustained organic brain damage which left him unable to speak, hear well or make himself understood.
Only the third and fourth categories mentioned in Corsey may be reasonably relied upon by appellant in this case. The third category requires proof that the tortfeasor himself has done some act which effectively prevents the injured party from availing himself of his cause of action; and the fourth category requires the cause of action is not known or knowable to the plaintiff. After reviewing the record we find the deposition testimony of both the appellant and her treating psychiatrist, Dr. Christopher Velardo, supports the trial judge's conclusion, i.e., that plaintiff had sufficiently regained her memory of the complained of events at least a minimum of one year before the filing of this suit. For this reason we are required to maintain the exception of prescription.
Appellant's last communication with Father Gilbert was in 1967. In her deposition testimony, appellant admits there was nothing done by Gilbert following their last encounter that prevented her from filing suit:
Q. All right. From the time that you last saw Aldeo Gilbert in 1967 did you ever speak to him again on the phone?
A. After the last time I went and got my face burned, no.
Q. Did you ever have any written communication with him or anything?
A. No.

*9 Q. Was there anything that he did after you last saw him to stop you from taking any action that you might have been able to avail yourself of, to do something about whatever he did do after you last saw him?
A. I don't understand your question.
Q. After you last saw him in 1967 can you name me anything he did thereafter to prevent you from taking legal action?
A. No. I just know that I feared him and that I was ashamed and I just wanted to go on with my life. I wanted to see what else there was.
Q. But after you last saw him though you never had any further contact with him; correct?
A. No.
Q. So, after you last saw him he never threatened you; correct?
A. I never saw him.
Q. Right. In other words, he never threatened you after you last saw him; right?
A. I never called him, no.
Q. He had never had anybody deliver a message to you; correct?
A. No.
Q. Physically you were no longer under his control; correct?
A. Correct.
Q. You cannot name anything specific that he did after you last saw him that practically stopped you from filing the lawsuit?
A. No. I didn'tI was just wanted to be away from it all. I wasn't thinking of law.
Velardo also testified he did not believe there was anything done by Father Gilbert subsequent to their last communication in 1967 that would have prevented appellant from taking legal action:
Q. Now, if, in fact, her last communication with Father Aldeo Gilbert, either in person, verbally or in writing was in 1967, do you know of anything subsequent to that that would have prevented her from taking any sort of legal action, that would have been done by Father Gilbert after he last had contact with her?
A. If Father Gilbert would have
Q. Do you know of anything that he could have done subsequent to his last contact with her over, roughly, 25 year period that would have prevented her from taking any legal action?
A. I can't think of anything that happened.
In Bock v. Harmon, 526 So.2d 292 (La. App. 3d Cir.), writ denied, 531 So.2d 275 (La.1988), this court was faced with a similar situation. In that case the plaintiff filed suit against his father for sexual and other abuse he sustained as a minor. Plaintiff attained the age of majority three years before filing suit. Plaintiff argued the doctrine of contra non valentem applied to suspend the running of prescription. Rejecting plaintiff's attempt to invoke the doctrine of contra non valentem, this court stated as follows:
Clearly Dr. Harmon took no affirmative overt action to prevent Fred from instituting a civil suit against him. Any psychological block which Fred may have had about bringing a civil action against his father cannot really be compared to the organic brain damage suffered by the plaintiff in Corsey, supra. We can only imagine the conscious and subconscious avoidance and suppression measures this young man must have employed to continue functioning on a daily basis in high school and afterward. But after attaining the age of majority, Fred was free to move out of his father's home. He was not incarcerated as was the plaintiff in Corsey, supra. His mother and sibling(s) lived in Hammond and Fred visited them regularly. He chose to stay in his father's home because it was convenient.
Despite the horrible abuse inflicted by his father, Dr. Harmon was still Fred's father. We can fully understand the reluctance of a son to institute a civil action against his father. But it appears from the recordfrom a statement made by Fredthat he had never even conceived that it was possible to sue his father, have him arrested yes, but sue him, no. Despite the suppression of the memories of these experiences, there is no question but that Fred was fully aware of the illegality and perverse nature of the things his father *10 did. His failure to file suit was due to a number of factors, including embarrassment, fear of ridicule, a distorted view of his father's power and accountability for his actions, as well as a general ignorance of his legal remedies as an injured party. We do not mean to deprecate the psychological trauma Fred was experiencing but we are unable to apply the "exceptional" doctrine of contra non valentem to the facts of this case.
It is clear to us from the testimony that appellant recalled the events giving rise to the cause of action against Father Gilbert and knew it was wrong for him to engage in such activities. Although the alleged mental and physical abuse administered to appellant while under the control of Father Gilbert may have affected a clear, precise recollection of specific acts of sexual abuse, appellant was admittedly aware and cognizant of the abuse once she was out of the control of Father Gilbert. However, suit was not filed until December 4, 1992, some 25 years after appellant's last contact with Father Gilbert. Assuming arguendo plaintiff was not able to confront these painful memories until she underwent psychiatric counseling, the record reveals her memory was restored and she discussed the possibility of suit a year before filing.
Dr. Velardo testified that he, appellant, and her counsel discussed the possibility of legal action approximately two years before the suit was filed:
Q. Did she ever bring up the subject with youwhen did the subject of litigation first arise during your counseling?
A. Well, one of the times it did arise is when her attorney Don LeBaron wanted to come and see me. And that's when we talked about it at that point. So that was back in December.
Q. That is referenced in the office visit where you made reference to his name?
A. Yes.
Q. That would have been 12-06 of 1990?
A. Yes, about that.
By amended petition, appellant limited her claim to one incident of "homosexual rape" by a female follower of Gilbert, which occurred in 1961. Appellant contended she did not recall this event until December 6, 1991, while undergoing therapy with Velardo. She contends the suit filed on December 4, 1992 was within one year after her recollection of this event and thus timely. However, appellant's own testimony, as well as Velardo's, contradicts this contention.
Velardo's notes of October 25, 1990 described appellant's recollection of the following event:
"... kissing Rose with Rose on couch. Smooching, not open mouth. Christmas party, beer and alcohol. Felt sexual arousal first time, fell asleep on shoulder, don't remember sexual contact. First year breast surgery, not stay up. Rose gave her a bath, made really well, good body, mom mad at her for giving baby picture. Slept with her that night, not remember. Drinking, kissing, boys there from seminary."
Velardo specifically testified that the "recollection" of December 6, 1991 actually first was discussed in October of 1990:
Q. Okay, you told Mr. Wright that the note of yours of 12-06-91, additional material et cetera, referred back to a session that you had had with her, I think you said in late October. Can you specifically pinpoint that session when this topic had been discussed in October of '90?
A. Well, actually it goes back to 10-25 on the back part where I have the "X" right there.
Q. All right. And
A. About the smooching and the kissing and stuff like that.
Q. Thank you sir, that's all I have.
Appellant in her deposition admitted, just prior to beginning therapy with Velardo in October of 1990, she received a phone call from her cousin (Cheryl Guillory) who asked appellant if she remembered any abuses that had happened to her at the hands of Father Gilbert. Appellant testified as follows:
Q. And what did you tell her?
A. I told her yes. I told her about Father Gilbert tucking me in as a child and about the women, the kissing and the *11 smooching, and then I recounted to her the last times that I had visited with him as an adult.
Q. And that's the incident where he had you on the table and then burned you with the cigarette?
A. Right.
After a thorough review of the record, we agree the doctrine of contra non valentem does not apply to the facts of this case. Appellant clearly remembered the alleged abuses suffered at the hands or direction of Father Gilbert. She was not unable to act, but chose not to do so and allowed her claim to prescribe. Sympathy we share for the victim of Gilbert's alleged misconduct. The suffering she endured and will continue to endure as a consequence of his unholy acts warrants retribution. With heavy hearts, however, we must affirm the trial court's judgment sustaining the exception of prescription particularly noting the admissions of the victim and her therapist. The secular laws of this State prevents us from judicially editing the applicable prescription statute or from expanding the "exceptional" doctrine of contra non valentem to achieve a desired end no matter how just or morally right.

FRIVOLOUS APPEAL
The defendants answered the appeal and seek damages for a frivolous appeal pursuant to LSA-CCP article 863. Damages for a frivolous appeal are appropriate when it is clear the appeal was taken for purpose of delay or when it is evident that appellant's counsel does not seriously advocate the position taken. Appeals are always favored and the slightest justification for an appeal precludes damages for frivolous appeal. Murphy v. Boeing Petroleum Services, 600 So.2d 823 (La.App. 3d Cir.1992). Although appellant did not prevail on appeal, we do not believe frivolous appeal damages are appropriate in this case. The record convinces us plaintiff genuinely believed in the merits of her petition.

COURT COSTS
Lastly, in answer to this appeal defendants contend the trial court erred in splitting costs equally among the parties even though they were the prevailing party.
LSA-CCP article 1920 provides for the assessment of costs:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Art. 1920 has been liberally interpreted as granting the trial court broad discretion in apportioning costs as it deems equitable. Davis v. State, DOTD, 647 So.2d 552 (La. App. 3d Cir.1994); Lognion v. Calcasieu Parish Police Jury, 503 So.2d 1092 (La.App. 3d Cir.), writ denied, 507 So.2d 227 (La. 1987). We do not find the trial court abused its discretion by splitting costs equally among the parties.

DECREE
For the above reasons, the judgment of the trial court is affirmed. Defendants' request for damages for frivolous appeal is denied. Costs of this appeal are assessed one half to plaintiff-appellant and one half to defendants-appellees.
AFFIRMED.