671 So.2d 1093 (1996)
Christopher JOHNSON, Plaintiff-Appellee,
v.
CONCORDIA BANK & TRUST CO., Defendant-Appellant.
No. 95-1187.
Court of Appeal of Louisiana, Third Circuit.
March 27, 1996.
*1095 Harry James Lossin Sr., Jonesville, for Christopher Johnson.
Virgil Russell Purvis Jr., Jonesville, Raymond Landry, Metairie, for Concordia Bank & Trust Co.
Before PETERS, AMY and SULLIVAN, JJ.
SULLIVAN, Judge.
Plaintiff, Christopher George Johnson, sued defendant, the Concordia Bank and Trust Company (Concordia Bank), alleging that the defendant wrongfully disbursed interest accrued from his certificate of deposit during his tutorship to his tutrix, Bessie Adams, in violation of the judgment of tutorship. In its answer, Concordia Bank denied having any actual knowledge of the tutorship judgment and denied any liability to Johnson. Defendant also filed a third-party demand against Adams.
Johnson filed a motion for summary judgment, and Concordia Bank filed a peremptory exception of prescription. After conducting separate hearings on these two matters, the trial court rendered judgment denying defendant's exception of prescription and granting plaintiff's motion for summary judgment. Concordia Bank appeals, asserting that the trial court erred in these two rulings. For the following reasons, we affirm the trial court's denial of defendant's exception of prescription and reverse the trial court's grant of summary judgment in favor of plaintiff.

FACTS
Johnson's mother, Janet Graves, died as a result of an accident which occurred on September 25, 1981. At the time, Johnson was six years old. Adams, Graves' mother and Johnson's grandmother, was appointed his tutrix by the trial court. She then brought suit on Johnson's behalf against various defendants for the wrongful death of his mother. The litigation was settled for $159,626.67. After the payment of his attorney fees and litigation costs, Johnson netted $99,328.09 from the settlement. By judgment rendered and signed on December 6, 1982, Adams was ordered to deposit these funds "for the use and benefit of ... Johnson, the said funds not to be withdrawn prior to the emancipation or majority of ... Johnson, without further orders of this court."
A second judgment, which the trial court also rendered and signed on December 6, 1982, authorized Adams to borrow $671.91 to increase the assets to $100,000.00, which Adams was to invest in a six-month certificate of deposit with Concordia Bank at the highest interest rate available. The trial court also authorized Adams to borrow an additional $2,500.00 to purchase the undivided one-half interest of Grady Graves, the deceased's widower, in a lot owned in indivision by Graves and Johnson (as his mother's sole heir). In the final paragraph of the judgment, the trial court ruled as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ½ of the interest on the certificate of deposit be withdrawn monthly and paid to Bessie Adams for the use and benefit of Christopher George Johnson, and the other ½ of the interest earned be paid on the note for the $2,500.00 plus the $671.91 until that note is paid in full; thereafter, that ½ interest be re-invested in the Certificate of Deposit.
Adams invested the $100,000.00 in a six-month certificate of deposit at Concordia Bank. Each certificate of deposit was renewed after its term expired. During Johnson's minority, the Concordia Bank issued monthly checks to Adams representing the total amount of interest earned on the certificates *1096 of deposit. The interest earned averaged approximately $600.00 per month.
Johnson attained the age of majority on May 17, 1993. He contacted Concordia Bank to withdraw his money. The defendant issued Johnson a check for $100,000.00. Johnson expected the amount to be higher as a result of the reinvestment of interest earned after the loans were paid. Concordia Bank informed him that no interest earned was reinvested into the certificate of deposit. After the loans were paid off, Concordia Bank had continued to issue a monthly check to Adams for the total amount of interest earned.
On April 13, 1994, Johnson sued Concordia Bank seeking recovery of one-half of the interest accrued from December 7, 1982 through May 17, 1993 on the certificates of deposit and interest which would have accrued on the reinvested, accrued interest, less payment of the initial loans which were approved by the trial court. He also sought attorney fees and penalties. In his petition, Johnson alleged that Concordia Bank had actual knowledge of the judgments authorizing Adams to invest his money into the Concordia Bank certificate of deposit. He further asserted that, in violation of the trial court's directive, Concordia Bank wrongfully disbursed one-half of the accrued interest which was ordered to be reinvested. Johnson additionally alleged that Concordia Bank violated the provisions of the Uniform Fiduciaries Law by making personal loans to Adams, which were paid off with interest earned on the certificates of deposit, without prior court approval. He asked for an award of attorney fees, penalties and interest for the wrongful conversion and mismanagement of his funds.
In its answer, Concordia Bank denied having knowledge of the tutorship judgments and denied being liable to Johnson under any theory of recovery asserted in his petition. As part of its answer, Concordia Bank named Adams as a third-party defendant. Defendant also asserted peremptory exceptions of no cause of action, no right of action, and liberative prescription. In addition, Concordia Bank alleged the affirmative defenses of setoff, failure to mitigate damages, and the third-party fault of Adams. In support of its defense of setoff, Concordia Bank attached as an exhibit an accounting of the tutorship filed by Adams in those proceedings. Therein, Adams attested that all money sent to her by Concordia Bank was used "for the use, benefit and care of Christopher George Johnson."
On January 11, 1995, Johnson filed his motion for summary judgment. In support of his motion, he filed his affidavit in which he stated that he was not supplied with copies of the interest checks from December 7, 1982 to May 17, 1993. Johnson asserted that he did not receive the use or benefit of the one-half of the interest earned. He also pointed out, with reference to notations appearing on the backs of the interest checks, that the interest was applied to the court-approved loans and other unapproved loans to Adams, with the balance being paid to Adams. Johnson further asserted that this interest, coupled with Adams' Social Security check and Johnson's Social Security survivor benefit check, "was more than sufficient to provide him ... with support and education. As a matter of fact, there was a surplus, which was used to support the other relatives who lived in the mobile home."
Concordia Bank filed a memorandum in opposition to Johnson's motion for summary judgment. Therein, defendant asserted that disputed issues of material fact should preclude the court from granting summary judgment. Concordia Bank then filed its exception of prescription. It alleged that plaintiff's suit is untimely because he accused the defendant of committing the tort of conversion, to which the one-year prescriptive period for delictual actions applies. Concordia Bank asserted that Johnson's action for wrongful disbursement (conversion) arising from transactions which occurred prior to January 5, 1993, one year prior to the date on which this suit was filed, had prescribed.
On February 13, 1995, the trial court conducted a brief hearing on plaintiff's motion for summary judgment. The trial court took the matter under advisement.
On February 15, 1995, the parties took the deposition of Adams. She stated that, after *1097 Johnson's mother died, he lived with Adams and her husband, George, and their two children, Michael and Melissa. According to Adams, George worked as a crane operator in the construction industry. Sometimes, he did not work because he was laid-off or due to weather conditions. When George did not work, the family was supported by Johnson's Concordia Bank interest check and his Social Security survivor benefit check. Adams stated that the Social Security survivor benefit check amount was between $200.00 and $300.00 per month. George died in 1988, and thereafter, Adams began collecting a monthly Social Security survivor benefit check of approximately $500.00.
Adams explained that, most of the time, she would pick up the monthly interest check at Concordia Bank. From the amount collected, she would pay the household's electric bill, which averaged between $120.00 and $140.00 per month. She stated that the interest money was used to feed, clothe, keep warm and shelter Johnson. According to Adams, Johnson ate meals only at their home. She spent approximately $100.00 per week for food. Adams stated that the money was also used for Johnson's education and routine medical expenses, along with the payment of the mobile home note. She denied ever buying herself any personal items with the interest money, which was spent on Johnson and the rest of the household because Johnson needed a place to live. Adams explicitly disagreed with the proposition that the certificate of deposit interest proceeds and the Social Security check were more than sufficient to support and educate Johnson. She denied that a surplus existed after the payment of Johnson's necessary expenses. She also disagreed with Johnson's assertion that he did not get the use or benefit of the certificates of deposit during his tutorship.
On April 13, 1995, the trial court conducted a hearing on Concordia Bank's exception of prescription. At the close of the hearing, the trial court took the matter under advisement.
On July 6, 1995, the trial court rendered judgment in this matter denying Concordia Bank's exception of prescription and granting Johnson's motion for summary judgment.
In the judgment, the trial court awarded Johnson:
[T]he full amount of one-half (½) of the interest accrued from December 7, 1982 through May 17, 1993 on the $100,00.00 [sic] Certificate of Deposit, plus interest which would have accrued on the interest reinvested on a monthly basis, less payment of the initial loans approved by Court Order, plus legal interest from date of judicial demand and all costs of these proceedings.
The trial court did not render any written or oral reasons for its ruling. It is from this judgment that Concordia Bank now appeals.

PRESCRIPTION
Concordia Bank contends on appeal that Johnson's claim is based on the tort of conversion, to which the one-year prescriptive period for delictual actions applies. Johnson counters that, in disbursing his funds to Adams, Concordia Bank was acting pursuant to a court-approved contractual relationship whereby the bank held his funds in trust. As such, Johnson argues that the ten-year prescriptive period for contractual actions should apply to this case.
The nature and character of an action as disclosed by the pleadings must be determined before we can decide which prescriptive period is applicable to that action. Starns v. Emmons, 538 So.2d 275 (La.1989); Hampton v. Hibernia National Bank, 598 So.2d 502 (La.App. 2 Cir.1992). The nature and character of the action is determined by examining the allegations and prayer of the petition. State v. Ferek, 94-0383 (La.App. 1 Cir. 3/3/95), 652 So.2d 597.
Plaintiff alleges that Concordia Bank wrongfully disbursed his earned interest to Adams in derogation of a previously existing court order and in violation of the Uniform Fiduciaries Law. In Labbe v. Premier Bank, 618 So.2d 45, 46 (La.App. 3 Cir.1993), this court reasoned as follows:
A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or *1098 for an indefinite time, is a conversion. issues of fault, intent, negligence, knowledge or ignorance, and/or good faith are not involved in actions for tortious conversion. Hagberg v. Manuel, 525 So.2d 19 (La.App. 3d Cir.1988).
See also Simon v. Fasig-Tipton Co., 92-173 (La.App. 3 Cir. 3/22/95), 652 So.2d 1351, writs denied, 95-1010, 1013 (La. 6/2/95), 654 So.2d 1111 and Hampton, 598 So.2d 502.
Clearly, the allegations of plaintiff's petition and his prayer for relief contemplate that he is seeking redress for conversion, an act in derogation of his possessory rights, on the part of Concordia Bank. Since conversion is a tort, the prescriptive period for delictual actions applies to plaintiff's action.
La.Civ.Code art. 3492 provides:
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.[1]
Prescription runs against all persons, including minors, unless an exception is established by legislation. La.Civ.Code arts. 3467, 3468. It is suspended as between "tutors and minors during tutorship." La.Civ.Code art. 3469. However, Revision Comment (c) to Article 3469 provides as follows:
The suspension of prescription is effective only as between spouses, parents and children, tutors and minors, and curators and interdicts. There is no suspension of prescription vis-a-vis third persons. Thus liberative prescription, acquisitive prescription, and prescription of nonuse may accrue in favor of a third person to the prejudice of a spouse, a minor, or an interdict.
[Emphasis added.]
Concordia Bank contends that, as a third party to the tutorship relationship, liberative prescription is not suspended in favor of Johnson by operation of this article. We agree. In the context of the facts presented, Article 3469 only suspended prescription between Johnson and Adams during his tutorship. The article has no effect on prescription vis-a-vis Concordia Bank.
The prescription article at issue, La. Civ.Code art. 3492, is to be "strictly construed against prescription and in favor of the obligation sought to be extinguished by it." Doe v. Roman Catholic Church, 94-1476, p. 3 (La.App. 3 Cir. 5/3/95), 656 So.2d 5, 7, writ denied, 95-2076 (La. 11/13/95), 662 So.2d 478. In the event that the petition reveals on its face that prescription has run, the claimant has the burden of proving why the claim has not prescribed. He may rely on three theories in this regard: suspension, interruption and renunciation. Bouterie v. Crane, 616 So.2d 657 (La.1993).
Although the Civil Code articles are clear that prescription runs against all persons unless a legislative exception is established, the courts of this state have nevertheless established the doctrine of contra non valentem agere nulla currit prescriptio, which means "prescription does not run against a party unable to act." This jurisprudential principle is considered an exception to the legislative rules governing the suspension of prescription. The principles of equity and justice, upon which contra non valentem is based, demand that in certain instances prescription be suspended because the plaintiff was effectually prevented from enforcing his own rights due to reasons external to his own will. Id.; Corsey v. State, Through Department of Corrections, 375 So.2d 1319 (La.1979). In Doe, 94-1476, p. 4, 656 So.2d at 8, this court restated the situations to which contra non valentem applies as follows:
Generally, the doctrine of contra non valentem suspends prescription where the circumstances of the case fall into one of the following four categories:

*1099 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

Rajnowski v. St. Patrick's Hospital, 564 So.2d 671, 674 (La.1990); Whitnell v. Menville, 540 So.2d 304 (La.1989); Plaquemines Parish Com'n Council v. Delta Development Co., Inc., [502 So.2d 1034 (La.1987)]; Corsey v. State, through Dept. of Corrections, 375 So.2d at 1321-1322; but see Bouterie v. Crane, supra [Bouterie's claim did not squarely fit into any of these 4 categories but was closely analogous to the second category; therefore prescription was suspended.].
In the case sub judice, Johnson was a minor when every one of Concordia Bank's alleged wrongful disbursements took place. Therefore, because Johnson was deemed by law to be incapable of administering his own affairs, Concordia Bank issued the monthly interest checks to Adams, his tutrix. Adams spent the money to benefit Johnson, herself and the other members of her household. Coincidentally, she was the only person who could have brought this action on behalf of Johnson during his minority. It is unreasonable to consider that she would have made such a demand on Concordia Bank or filed such an action at any time during Johnson's minority, given the fact that she and her family were benefiting from the interest disbursements.
We conclude that, under the particular facts and circumstances of this case, tenet number two, above, of the doctrine of contra non valentem applies. The fact that his tutrix was accepting these allegedly wrongful disbursements on his behalf qualifies as a condition connected with the proceedings which prevented Johnson from suing Concordia Bank. He reasonably trusted and relied upon Adams to manage his affairs and had no reason to doubt that she was not following the mandates of the court orders in the tutorship proceedings. Consequently, Johnson, during his minority, reasonably believed that the interest accrued after payment of the loans was being reinvested into the Concordia Bank certificate of deposit, not paid in full to Adams. Ironically, Johnson was, for all practical purposes, precluded from suing Concordia Bank by the very structure of his tutorship.
Under these circumstances, we conclude that prescription was suspended during Johnson's tutorship. Therefore, his action against Concordia Bank is not prescribed because he filed suit within one year of attaining majority.

SUMMARY JUDGMENT
On appeal, Concordia Bank contends that the trial court erred in granting summary judgment in favor of Johnson because material factual issues are in dispute. For the following reasons, we agree with this position.
La.Code Civ.P. art. 966(B) provides the criterion by which the court is to evaluate a motion for summary judgment. It reads, in pertinent part, as follows:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
The standard of review for summary judgments is de novo. In other words, an appellate court must apply the same criterion as does the trial court in determining whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, 93-2512 (La. 7/5/94), 639 So.2d 730. The supreme court in Smith, 93-2512, pp. 28-29, 639 So.2d at 750-752, presented an authoritative and exhaustive review of the jurisprudential rules applicable *1100 to summary judgments. Within its discussion, the court explained the mover's burden of proof as follows:
Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. LSA-C.C.P. Art. 966(B); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983). In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Vermilion, 397 So.2d at 493; Pace [v. Zilka], 484 So.2d [771] at 773 [(La.App. 1 Cir.), writ denied, 488 So.2d 691 (La.1986.)].
If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Sanders, supra.

Id. at 752.
"A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Material facts are those which potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of a legal dispute." Faul v. Bank of Sunset & Trust Co., 93-1080, p. 6 (La.App. 3 Cir. 4/6/94), 635 So.2d 573, 577, writs denied, 94-1627 (La. 9/30/94), 642 So.2d 879 and 94-1659 (La. 9/30/94), 642 So.2d 880. A material fact is one that would matter at trial on the merits. Smith, 639 So.2d 730.
It is also well settled that whether a summary judgment is properly granted is to be determined with reference to the applicable substantive law. In this regard, we note that plaintiff is not entitled to restoration of those funds which were in fact applied to his benefit in providing support or education. See Deville v. Federal Savings Bank of Evangeline Parish, 93-1853 (La. 4/11/94), 635 So.2d 195. After reviewing Johnson's petition and affidavit supporting his motion and the substance of Adams' deposition and her affidavit in support of the tutorship accounting, we conclude that material factual issues remain in dispute. These include the degree of Concordia Bank's knowledge with regard to the tutorship judgments and the monetary percentage of the allegedly wrongfully disbursed interest checks which were in fact used by Adams to benefit Johnson during his tutorship. These are facts which will affect Johnson's recovery, if any, and may in fact insure or preclude his recovery. Therefore, the trial court erred in granting summary judgment in favor of Johnson.

DECREE
For these reasons, we reverse the summary judgment rendered by the trial court in favor of plaintiff-appellee, Christopher Johnson, and affirm the trial court's denial of Concordia Bank's exception of prescription. We further remand this case to the trial court for further proceedings in accordance with this opinion. Costs of these proceedings are assessed equally to both parties.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
AMY, J., concurs in part and dissents in part and assigns reasons.
AMY, Judge, concurring in part and dissenting in part.
I agree with the majority's resolution of the summary judgment issue; however, I respectfully disagree with the majority's decision to affirm the denial of the exception of prescription. In my view, the doctrine of *1101 contra non valentem does not operate, under the facts of this case, to suspend prescription as to Christopher Johnson's tort action against Concordia Bank & Trust Co. Accordingly, I would reverse the trial court and grant the exception of prescription.
NOTES
[1] This article was enacted in 1983 by Act No. 173, effective January 1, 1984. According to Revision Comment (a), the first two sentences reproduce the substance of pre-revision La.Civ. Code arts. 3536(1) and 3537(2), respectively, and do not change the law.