610 So.2d 1017 (1992)
Stephanie HELD
v.
STATE FARM INSURANCE COMPANY, et al.
No. 91 CA 2267.
Court of Appeal of Louisiana, First Circuit.
November 25, 1992.
Writ Denied February 19, 1993.
Robert W. Morgan, Dick S. Felder, Baton Rouge, for plaintiff-appellant Stephanie Held.
Hank S. Hannah, Baton Rouge, for defendant-appellee State Farm Fire and Cas. Co.
E. Trent McCarthy, Baton Rouge, for defendant-appellee Roy Scott Held.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
*1018 SHORTESS, Judge.
Stephanie Held (plaintiff) filed this suit on October 26, 1990, against her father, Roy Scott Held (Held), and his homeowners liability insurer, State Farm Insurance Company, for damages arising from alleged sexual molestation which began when she was twelve years old and continued until she was eighteen.
Both defendants filed separate peremptory exceptions of prescription. The trial court, with oral reasons for judgment, dismissed plaintiff's suit as to both State Farm and Held. Plaintiff has appealed.
FACTS
Plaintiff was born on October 28, 1969. She testified in deposition Held began sexually molesting her when she was twelve years old and continued this conduct until the summer of 1988 when she was eighteen years old. Specifically, she testified it stopped on August 21, 1988, when she moved into Miller Dormitory at Louisiana State University for her second year of college. About this time, plaintiff and her family were getting psychological help because of an unrelated matter by Stacy Hockstader of the Exxon Health Advisory Program, an employee assistance agency. On September 16, 1988, on her third visit, plaintiff told Hockstader she had been sexually abused by her father. Hockstader counseled plaintiff for her problem through December 1988 and then referred her to Virginia Dark, a clinical social worker. She was still seeing Dark on the date of her deposition, March 22, 1991.
Plaintiff's description of the abuse she allegedly received from her father was poignantly pathetic and tragic: it began during the summer of 1982, between her seventh and eighth grades; Held worked twelve-hour shifts so was home during the day while plaintiff's mother was at work. Plaintiff said he began by "touching me differently ... he hugged me a little closer and started touching my breasts ... he told me that I was maturing into a young woman, and that he was going to be able to show me what my body would be able to do, and we were going to have a special father/daughter relationship."
When plaintiff came home during her first year at LSU, she told Held she did not want to continue the relationship because she did not like it. She told him she wanted "to save myself for whenever I got married." Notwithstanding, it continued because "[w]henever he wanted anything, I couldn't resist." She stated he dominated her by sexual abuse and also by financial control: "Come that spring of '88, they didn't pay tuition, room and board, and have not paid anything since then."[1] Her parents agreed to pay for her counseling and did so until the fall of 1990 when they wanted her to sign a "written agreement." It was only then plaintiff began to look into her legal options. She paid for a September 1990 workshop after her parents refused and then sent them the bill which they never paid.
And what about the therapy? Virginia Dark testified by deposition she had treated plaintiff since December 1988 for post-traumatic stress disorder (PTSD) caused by sexual abuse. Dark felt plaintiff lived with a great deal of guilt over the situation; that part of the healing process requires anger, which is very difficult when the perpetrator is the parent of the victim; that when a person cannot get angry, he/ she protects the perpetrator; that when plaintiff confronted her parents in September 1988, she took the first step in the process of working through her trauma; that the trauma inflicted upon her damaged her emotional development and made it very difficult to make adult decisions; and that it was only the summer of 1990 plaintiff began to place responsibility on her father and not feel guilty herself.
Michael B. Atkinson, a clinical psychologist at the Louisiana State University Health Center, saw plaintiff in group therapy sessions from January 1989 until May 1991. Atkinson testified by deposition that his diagnosis was post-traumatic stress disorder and family problems; that plaintiff *1019 was aware she had been abused in October 1988 but had not been able to sort out the responsibility; that group therapy helps the victim place the responsibility where it belongs; that plaintiff initially was not confident and her powerlessness was exacerbated in relation to her father and exaggerated in her mind; that plaintiff gradually developed confidence in her ability to take care of herself and has been totally supporting herself; and that she did not have the wherewithal until her treatment progressed through the regressive experiences[2] (May 1990) to place the responsibility for her problem where it rightfully belonged.
LAW
Prescription runs against a minor, unless an exception is established by legislation. The law applicable to plaintiff, Louisiana Civil Code article 3469, provides for suspension of prescription during minority. Plaintiff was born October 28, 1969. She reached majority on her eighteenth birthday, October 28, 1987. Her cause of action prescribed[3] one year later on October 28, 1988, unless the doctrine of contra non valentem agere nulla currit praescriptio is applicable here. This Latin phrase means prescription does not run against one unable to act. Initially we note courts have used contra non valentem reluctantly. However, the Louisiana Supreme Court in Corsey v. State, 375 So.2d 1319 (La.1979), applied contra non valentem's third principle, "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action," to Corsey, an Angola inmate, who suffered organic brain damage after he was stabbed by another inmate. The legal prescriptive period of one year had run before Corsey recovered sufficiently from his extensive injuries to file suit. The supreme court held prescription did not run against Corsey, who was unable to act, and noted the principle is especially applicable where plaintiff's inability is due to defendant's willful or negligent conduct.
At first blush, it might appear organic brain injury is more disabling than a PTSD. We disagree. The "unable to act" test should not depend upon the disability's label but its effect upon plaintiff. Here, the completely unrebutted evidence paints a sad picture of an abused young woman struggling almost desperately to regain her human equilibrium while facing a most hostile family environment. Initially her parents paid for therapy, but this was while she was still struggling with the guilt phase and her role in this matter. Only after she successfully overcame this impediment to recovery did she accept in her own mind she was truly an innocent victim. At that time (summer/fall 1990), she placed the sole guilt on her father.
Additionally, plaintiff's parents discontinued payment of her tuition and other college expenses immediately after the confrontation, and, even though they did pay for therapy for some period of time, it was only because it was covered by insurance, and eventually even this support was stopped. This degree of financial domination *1020 and control certainly played a role in plaintiff's early ambivalence as to her guilt.
In Corsey, the supreme court enumerated three categories of situations in which the early jurisprudence held that contra non valentem was applicable:
so as to prevent the running of liberative prescription: (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.
375 So.2d at 1321 (footnotes and emphasis deleted).[4]
The facts compel us to recognize two categories of contra non valentem, i.e., (2) and (3). Plaintiff's post-traumatic stress disorder prevented her from acting until she knew she was completely innocent and her father was solely responsible, triggering the second category. Her parents' refusal to pay for her therapy triggers the third category. We find the combination of these two factors makes contra non valentem applicable here, and prescription began to run only in the fall of 1990; therefore plaintiff's suit was timely filed.
We find the case of Bock v. Harmon, 526 So.2d 292 (La.App. 3d Cir.), writ denied, 531 So.2d 275 (La.1988), another sad case of child abuse by a father, inapplicable to the facts. Specifically, the court found that Fred Bock's embarrassment and fear of the attendant publicity that would surround his lawsuit was not sufficient to trigger application of contra non valentem, especially since he, after attaining majority, was free to move out but chose to stay in his father's house because it was convenient. Here, plaintiff was a minor most of the time and did move out just as soon as she could realistically do so after attaining majority and sued her father only when he stopped paying for her therapy.
Likewise, Doe v. Ainsworth, 540 So.2d 425 (La.App. 1st Cir.), writ denied, 542 So.2d 511 (La.1989), is inapplicable on the facts. This case involved sexual abuse by a minister against a minor member of the church, but there was no evidence disclosing any action by defendant which legally or practically stopped plaintiff from filing suit.
For the reasons stated, we reverse the decision of the trial court sustaining defendant's exception of prescription, and we remand this case for further proceedings. Costs of this appeal are taxed to defendants.
REVERSED AND REMANDED.
EDWARDS, J., concurs in the result.
NOTES
[1] Plaintiff mentioned with some justifiable pride that she had been able to continue in school notwithstanding her parents' refusal to pay for her tuition and room and board.
[2] According to Dr. Atkinson, group therapy assists participants (victims) in placing responsibility where it belongs. When the victim progresses through it and can verbalize the experience itself (regression), the prognosis for recovery becomes good because the victim finally is able to sort out the responsibility.
[3] But see Louisiana Civil Code article 3496.1, which was enacted by La.Acts 1988, No. 676, § 1, when it also amended article 3469. Article 3496.1 provides:

An action by [a] person against a parent or caretaker for infliction of abuse during minority is subject to a liberative prescription of three years. This prescription commences to run from the day the person attains majority.
A caretaker has the same meaning as provided in Article 3469.
* * * * * *
Section 2. This Act shall be applicable to all persons who attain majority on or after the effective date of this Act.
Plaintiff asked us to apply article 3496.1 retroactively, and defendants point to Section 2 of the Act. We pretermitted this issue because we have resolved this case in a contra non valentem analysis. We do note, however, the legislature has extended the prescription period to three years (plaintiff's suit has not prescribed without application of contra non valentem if this act is applicable to her), probably in recognition of the difficulty surrounding a minor's use of the legal process in similar circumstances.
[4] It is unnecessary for us to discuss the fourth category of contra non valentem which modern jurisprudence has recognized.