671 So.2d 466 (1995)
John DOE
v.
Jack DOE.
No. 95 CA 0006.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
Writ Denied January 12, 1996.
*468 Edward J. Walters, Jr., Baton Rouge, for Plaintiff, John Doe.
Stephen R. Wilson, Baton Rouge, for Defendant, Continental Casualty Insurance Company, Federal Insurance Company.
David H. Hardy, Boris Navratil, Baton Rouge, for Vigilant Insurance Company, The Sea Insurance Company, Ltd.
Charles Schutte, Baton Rouge, for United Services Automobile Association.
Marc W. Judice, Lafayette, for The Medical Protective Company.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
This appeal arises from a longterm homosexual relationship between plaintiff and his dentist which began when plaintiff was a minor. Plaintiff subsequently filed suit against the dentist and several of his insurers seeking damages for "severe psychological and emotional problems" resulting from the sexual relationship. A judgment notwithstanding the verdict (JNOV) was ultimately rendered in favor of plaintiff. We reverse, concluding the trial court erred in denying defendants' peremptory exceptions raising the objection of prescription.

FACTS
Beginning on May 16, 1979, Dr. Douglas Kemp was plaintiff's dentist. Several years later they began a sexual relationship. Although plaintiff alleges the relationship began when he was fifteen, the jury accepted the testimony of Dr. Kemp that the first sexual encounter occurred on April 13, 1983, the day before plaintiff's seventeenth birthday. Dr. Kemp continued as plaintiff's dentist; they had sexual relations after some of plaintiff's appointments. On other occasions, plaintiff went to the office without an appointment after the staff had gone for the day for the purpose of having sexual relations. Dr. Kemp testified plaintiff called his house once pretending to need emergency dental treatment in order to arrange meeting at Dr. Kemp's office. Plaintiff testified that Dr. Kemp also called him occasionally and requested that they meet at Kemp's office. On some of the occasions when they met, Dr. Kemp administrated nitrous oxide to plaintiff. The last sexual encounter occurred in September 1986.
On March 25, 1987, plaintiff filed a "John Doe" petition which identified defendant only by the fictitious name "Jack Doe", and did not request service. The petition made a general allegation that plaintiff was entitled to damages as the result of certain tortious acts. An amending petition was filed on August 5, 1987, naming Dr. Kemp as defendant, and seeking damages for psychological and emotional problems resulting from the sexual relationship. Subsequently, plaintiff added the following personal and professional liability insurers of Dr. Kemp as defendants: Continental Casualty Company, Federal Insurance Company, The Medical Protective Company, The Sea Insurance Company, Ltd., Vigilant Insurance Company, and United Services Automobile Association.
A jury trial was held on June 28-30, 1993. Prior to that time, Dr. Kemp was discharged in bankruptcy. Following trial, the jury returned special interrogatories finding both plaintiff and Dr. Kemp at fault in causing plaintiff's damages, with Dr. Kemp's fault being totally unrelated to his rendering of professional services. The jury assigned 15% fault to Dr. Kemp and 85% to plaintiff. However, the jury did not award plaintiff any damages. In accordance with the jury's verdict, the trial court rendered judgment dismissing plaintiff's claims against all defendants. Thereafter, the trial court granted plaintiff's motion for a JNOV and rendered an amended judgment assessing Dr. Kemp with 100% fault. Judgment was rendered in favor of plaintiff against the defendant insurers[1] *469 in the amount of $350,000.00 (subject to credit for $25,000.00 previously paid)[2], consisting of $47,000.00 for past medical expenses, $3,000.00 for future medical expenses, and $300,000.00 for general damages. All parties have appealed, raising numerous assignments of error.

DISCUSSION
On appeal, defendants contend the trial court erred in denying their exceptions of prescription. We conclude this argument has merit and is dispositive of the majority of plaintiff's claims (i.e., those claims based on acts which occurred more than one year prior to the filing of plaintiff's amended petition on August 5, 1987).[3]
Liberative prescription runs against all persons, including minors, unless exception is established by law. La.C.C. arts. 3467, 3468; Bouterie v. Crane, 616 So.2d 657, 659 (La.1993). The one-year liberative prescription period for delictual actions begins to run from the date the injury or damage is sustained. La.C.C. art. 3492; Bouterie, 616 So.2d at 660. Although prescriptive statutes are generally construed strictly against prescription, when a petition reveals on its face that prescription has run, the plaintiff bears the burden of proving why the claim has not prescribed. There are three theories under Louisiana law upon which a plaintiff may rely to establish that prescription has not run: suspension, interruption and renunciation. Bouterie, 616 So.2d at 660.
In the present case, plaintiff concedes the "John Doe" petition filed on March 25, 1987 was insufficient to prevent the running of prescription since no actual person was named therein.[4] Nevertheless, plaintiff maintains the claims asserted in the amending petition filed on August 5, 1987 are not prescribed because: (1) the "systematic sexual abuse visited upon him by Kemp constituted a continuing tort which did not abate until September, 1986, which was within one year of the First Supplemental and Amending Petition;" and (2) prescription was suspended under the doctrine of contra non valentem until February, 1987, when plaintiff learned of his cause of action for the first time.

CONTINUING TORT
When tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated. Bustamento v. Tucker, 607 So.2d 532, 542 (La.1992); South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531, 533 (La.1982). However, the principle of a continuing tort applies only when continuous conduct causes continuing damages. Laughlin v. Breaux, 515 So.2d 480, 482 (La.App. 1st Cir.1987). In this case, numerous sexual acts of a similar nature occurred over a span of several years. However, each act was separate and distinct.
*470 The acts did not occur daily or on any other regular basis, and were not continuous. We agree with those cases holding that damages from sporadic and intermittent acts of sexual abuse arise independently from each separate act of abuse and are not successive damages resulting from a continuing tort. Fontaine v. Roman Catholic Church, 625 So.2d 548, 552 (La.App. 4th Cir.1993), writ denied, 93-2719 (La. 1/28/94), 630 So.2d 787; Landreneau v. Fruge, 598 So.2d 658, 661 (La.App. 3rd Cir.1992); Crosby v. Keys, 590 So.2d 601, 602 (La.App. 2nd Cir.1991), writ denied 593 So.2d 373 (1992). See also Wimberly v. Gatch, 93-2361 (La. 4/11/94), 635 So.2d 206, 217-18. The conduct complained of by plaintiff in this case does not constitute a continuing tort.

CONTRA NON VALENTEM
In the alternative, plaintiff argues prescription was suspended under the doctrine of contra non valentem. Contra non valentem, which means that prescription does not run against one who could not bring his suit, is one means of suspending prescription. Bouterie, 616 So.2d at 660. The doctrine is based on the equitable principle that prescription should be suspended when a plaintiff is effectually prevented from enforcing his rights for reasons external to his own will. Wimberly, 93-2361, 635 So.2d 206 at 211. Generally, contra non valentem suspends the running of prescription in the following four situations:
1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
3. Where the defendant himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and
4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Wimberly, 93-2361, 635 So.2d at 211. Plaintiff contends both the third and fourth categories are applicable herein. The third category applies in situations where the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies. Id. In brief, plaintiff contends Dr. Kemp effectually prevented him from filing suit by endeavoring to molest plaintiff and get "his software in his computer." By this reference plaintiff apparently implies that Dr. Kemp had such control over plaintiff because of the nature of their relationship that plaintiff was incapable of asserting his cause of action.
In this case, there is no evidence that Dr. Kemp threatened plaintiff or took any action to prevent plaintiff from filing suit. While there may have been an imbalance of power in the relationship, the evidence indicates plaintiff was capable of exerting his will independently. One example concerns photographs Dr. Kemp took of plaintiff early in the relationship, which Dr. Kemp kept in a box at his office. Plaintiff was nervous about Dr. Kemp having the photographs and returned to his office a few days later to talk to Kemp about them. Dr. Kemp destroyed the photographs. Additionally, plaintiff testified that there were occasions when he refused Dr. Kemp's requests to meet and, when they did meet, refused requests that he perform certain sexual acts. In sum, the weight of the evidence reveals plaintiff was capable of acting in accordance with his own will, even when it was contrary to Dr. Kemp's, and was not effectually prevented from filing suit by any actions taken by Dr. Kemp. Thus, contra non valentem is not applicable on the grounds that Dr. Kemp's conduct prevented plaintiff from availing himself of his cause of action.
The fourth category of contra non valentem, which is commonly referred to as the "discovery rule", provides that prescription does not begin until the date the plaintiff discovers or should have discovered the facts upon which his cause of action is based. Wimberly, 93-2361, 635 So.2d at 211. In discussing the discovery rule, the Supreme Court stated:

*471 ... prescription does not accrue as it does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable.
The doctrine of contra non valentem distinguishes between personal disabilities of the plaintiff (which do not prevent prescription from running) and an inability to bring suit for some cause foreign to the person of the plaintiff (which suspends its running). The equitable doctrine is, in part, but an application of the long-established principle of law that one should not be able to take advantage of one's own wrongful act. Wimberly, 93-2361, 635 So.2d at 211-212.

(citations omitted)
In relying on the discovery rule, plaintiff does not claim he was unaware of the nature of the sexual acts at the time they occurred or that he blocked out his memories of those activities. Rather, plaintiff argues it was only after he entered therapy with a psychologist, Dr. Christine Angelloz, in February of 1987, that he was able to relate his psychological and sexual dysfunction problems to the sexual abuse he suffered from Dr. Kemp and to appreciate the facts central to his cause of action. Thus, he argues prescription was suspended until he began therapy, making the petition filed in August of 1987 timely. The trial court accepted this argument, concluding "plaintiff did not make a connection between his psychological suffering and what was going on [with Dr. Kemp] until he began undergoing psychotherapy with Dr. Angelloz."
The evidence does not support this conclusion. At trial Dr. Angelloz testified plaintiff did not know he had been harmed by Dr. Kemp when he first came to her for therapy. However, plaintiff's own testimony indicates otherwise. Plaintiff testified that, as early as his junior year in high school, he was troubled by intrusive memories of being with Dr. Kemp. He stated he had these memories, which he referred to as "tapes", whenever he became sexually aroused. While still in high school, this led plaintiff to experience sexual dysfunction with several girlfriends. Plaintiff acknowledged that he believed his sexual problems were caused by these "tapes", i.e., memories of sexual conduct with Dr. Kemp.
Thus, contrary to Dr. Angelloz's testimony, although plaintiff may not have understood these problems fully, he clearly made a connection at least two to three years before he began therapy in 1987 between at least some of his psychological and sexual problems and his sexual activities with Dr. Kemp. Prescription runs from the date a plaintiff first suffers appreciable damages, even though he may only later come to a more precise realization of the full damages he has suffered. Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La.1992); see also Laughlin v. Breaux, 515 So.2d 480, 482 (La. App. 1st Cir.1987). As noted, plaintiff knew of the events giving rise to his cause of action and admitted knowing they were wrong. Further, he was aware of a connection between these events and some of the problems he was experiencing well over a year before he filed the amended petition on August 5, 1987. While we are sympathetic to plaintiff's situation, the application of contra non valentem clearly was not warranted on the basis of the discovery rule.
The trial court erred in concluding this case resembles Held v. State Farm Ins. Co., 610 So.2d 1017 (La.App. 1st Cir.1992), writs denied, 613 So.2d 975 (1993), so closely as to mandate the denial of defendants' exceptions of prescription. In Held the plaintiff filed suit against her father for damages arising from sexual abuse she suffered while a minor. Although the suit was filed almost three years after plaintiff attained majority, this Court applied contra non valentem to hold that her claim was not prescribed. The medical evidence in Held established the plaintiff suffered from post-traumatic stress disorder (caused by the abuse), which prevented her from taking action earlier. Additionally, after plaintiff confronted her parents regarding the abuse, they discontinued payment of her therapy and college expenses. This Court held the combination of plaintiff's post-traumatic stress disorder and the financial domination of her parents triggered the application of contra non valentem.
*472 The present case is similar to Held in that the plaintiffs in both cases were diagnosed with post-traumatic stress disorder. However, the evidence in this case does not reflect, as it did in Held, that this condition made plaintiff incapable of asserting his cause of action. Another distinction is that, during a large part of the time in question, the plaintiff in Held actually lived at home with her parents, constantly subjecting her to a hostile family environment. Further, her father had tremendous emotional and financial dominance over her, which he used deliberately in an effort to control her. In the present case, plaintiff was not dependent on Dr. Kemp financially, never lived in the same household with him, and was not subjected to emotional and/or psychological domination of the degree exerted by the father in Held. Further, Dr. Kemp never took any affirmative action to prevent plaintiff from filing suit.
This case is more analogous to those sex abuse cases where, although the plaintiffs justifiably felt fear and embarrassment, as well as confusion about assigning responsibility and a natural hesitancy to confront the authority figures who abused them, the courts nevertheless held they retained sufficient mental and psychological capacity to file suit. See Doe v. Ainsworth, 540 So.2d 425, 428 (La.App. 1st Cir.), writ denied, 542 So.2d 511 (1989); Fontaine v. Roman Catholic Church, 625 So.2d 548, 552-53 (La.App. 4th Cir.1993), writ denied 93-2719 (La. 1/28/94), 630 So.2d 787; Landreneau v. Fruge, 598 So.2d 658, 662 (La.App. 3rd Cir. 1992); Bock v. Harmon, 526 So.2d 292, 296-97 (La.App. 3rd Cir.), writ denied 531 So.2d 275 (1988). In each of these cases, the courts declined to apply contra non valentem to suspend the running of prescription.
In the present case, while we are sympathetic to plaintiff's situation, we are compelled to reverse the trial court's ruling denying defendants' exceptions of prescription. A suit sufficient to interrupt prescription was not filed until over three years after plaintiff reached the age of majority. During the time in question, plaintiff attended college, maintained passing grades, and worked successfully at various jobs. While he clearly had emotional problems during this time, the record does not establish these problems made him incapable of filing suit. Further, Dr. Kemp took no action to prevent plaintiff from doing so. Under these circumstances, application of the doctrine of contra non valentem is not warranted. Thus, the judgment of the trial court denying defendants' exceptions is reversed and judgment is hereby rendered sustaining defendants' exceptions of prescription as to all claims based on acts which occurred more than one year prior to the filing of the August 5, 1987 petition.
Because the trial court erred in denying defendants' exceptions of prescription, both the JNOV and the judgment rendered in accordance with the jury verdict are interdicted. These judgments were based on the totality of the acts which occurred between plaintiff and Dr. Kemp. However, only those acts which occurred within one year of the August 5, 1987, petition should have been considered. Accordingly, it is necessary for this Court to make a de novo review of the record to determine the issue of liability. See Hoyt v. Wood/Chuck Chipper Corp., 92-1498R (La.App. 1st Cir. 1/6/95), 651 So.2d 1344, 1349, writ denied 95-0753 (La. 5/19/95), 654 So.2d 695; Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141, 1152 (La.App. 1st Cir.), writs denied 623 So.2d 1335, 1336 (1993), cert. denied ___ U.S.___, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994).
After a thorough review of the record, we find plaintiff is not entitled to judgment against defendants. The record establishes only one sexual encounter between plaintiff and Dr. Kemp which was not prescribed. In September of 1986, plaintiff returned to Baton Rouge after attending college in California for several weeks. Shortly thereafter, he met with Dr. Kemp and they had sex. Being twenty years old at the time, plaintiff was well past the ages of majority and of consent. This incident did not give rise to a claim for damages.
For the above reasons, that portion of the trial court judgment awarding plaintiff damages and assessing defendants with court costs is reversed and judgment is hereby entered in favor of all defendants dismissing plaintiff's suit. That portion of the trial *473 court judgment dismissing plaintiff's claims against the Medical Protective Company is affirmed. All costs are to be paid by plaintiff.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
NOTES
[1] Judgment was not rendered against The Medical Protective Company (MPC) on the primary demand. The trial court granted MPC's motion for involuntary dismissal, based on a "sex acts" exclusion in the MPC policy. However, the trial court did assess MPC with twenty percent (20%) of the court costs.
[2] Dr. Kemp was convicted of one count of crime against nature and one count of simple battery as a result of his sexual relations with plaintiff. As part of his sentence, he was ordered to pay restitution for plaintiff's medical expenses. Pursuant to a stipulation between the parties, the damage award was reduced by $25,000.00 to reflect credit for the restitution paid.
[3] La.R.S. 9:2800.9 (added by Acts 1993, No. 694, § 1) provides a ten-year prescriptive period for suits against a defendant for sexual abuse of a minor, and provides for the suspension of prescription until the minor reaches the age of majority. However, this provision, which became effective on August 15, 1993, is not applicable in this case. Absent a clear expression of legislative intent to do so, a legislative enactment changing a prescriptive period does not revive a cause of action already barred by liberative prescription prior to the effective date of the enactment. Chance v. American Honda Motor Co., Inc., 93-2582 (La. 4/11/94); 635 So.2d 177, 178-79. In this case, plaintiff's suit was already prescribed under the then applicable one-year prescriptive period prior to the effective date of La.R.S. 9:2800.9.
[4] Prescription is not interrupted as to an actual defendant when only a fictitious defendant is named in a petition, unless prescription is interrupted by some other means. Such petitions are without legal effect. Templet v. Johns, 417 So.2d 433, 437 (La.App. 1st Cir.), writ denied, 420 So.2d 981 (1982).