# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 25, 2011

No. 11-30443
Summary Calendar

Lyle W. Cayce
Clerk

THE GULF AND MISSISSIPPI RIVER TRANSPORTATION COMPANY, LIMITED.

Plaintiff-Appellant

v.

CHEVRON PIPELINE COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CV-00256

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In this tort action, Plaintiff-Appellant The Gulf and Mississippi River Transportation Company, Ltd. ("G&M") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Chevron Pipeline Co. ("Chevron") on its trespass claim. We AFFIRM.

---

[*] Pursuant to FIFTH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in FIFTH CIRCUIT RULE 47.5.4.

No. 11-30443

## FACTUAL AND PROCEDURAL BACKGROUND

In 1957, Plaintiff-Appellant G&M acquired a 1/5 interest in a 5.19-acre tract on Grand Terre Island, Louisiana (the "Tract"). On June 24, 1960, Gulf Refining Co. ("Gulf"), Defendant-Appellee Chevron's corporate predecessor, acquired a twenty-year servitude on the Tract to construct and operate a pumping station. Although the servitude expired on June 24, 1980, Gulf continued to operate the pumping station, and, on September 24, 1980, filed suit to expropriate a right-of-way to ensure its continued use of the pumping station. G&M, as a co-owner of the Tract, was named in the suit, and was served on September 25, 1980. Gulf, however, did not prosecute the suit to judgment.

On September 1, 1986, during the pendency of the litigation, Chevron sold its interest in the pumping station to Sohio Pipeline Co. ("Sohio"), the corporate predecessor of Defendant BP Oil and Pipeline Co. ("BP"). On October 11, 1988, Chevron purchased an undivided 1/8 of 3/25 (0.015) fee interest in the Tract from Texaco Publishing Inc., which Chevron then sold to Sohio/BP on November 23, 1988. BP continued to operate the pumping station until June 30, 2006, when BP sold its interests in the pumping station and the Tract to Plains Pipeline, L.P.

On April 15, 2010, G&M filed suit against Chevron and BP. G&M asserts that it owns an undivided 1/5 interest in the Tract, and claims that (1) Chevron and BP's operation of the pumping station from June 24, 1980 to August 12, 2009 constituted a single continuing trespass; and (2) that BP owes it income, revenue and profits from the period in which BP co-owned the pumping station with G&M.

On February 9, 2011, Chevron filed a motion for summary judgment, which, in relevant part, argued that, because a co-owner cannot commit trespass, the one-year prescription period for the trespass claims began to run on the day it became a co-owner of the Tract. On April 7, 2011, the district court granted

2

No. 11-30443

Chevron's motion, finding "once Chevron purchased an undivided interest in the Tract, it and its successors ceased to be trespassers . . . [;] [t]hus, the last tortious activity occurred on October 11, 1988, and so prescription commenced on that date, and [G&M's] claim prescribed one year after."

On April 20, 2011, the district court, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, entered partial final judgment in Chevron's favor, as the district court's summary judgment order resolved all claims against Chevron. On May 2, 2011, G&M filed a notice of appeal.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, construing all facts and inferences in the light most favorable to the nonmoving party. *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir. 2010). Summary judgment is proper only when the movant demonstrates that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Fed. Ins. Co. v. Ace Prop. & Cas. Co.*, 429 F.3d 120, 122 (5th Cir. 2005). In a diversity case such as this one, we apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## ANALYSIS

G&M appeals the decision by the district court on the ground that the prescription period did not begin to run on its trespass claim against Chevron because the operation of the pumping station, continued by BP after Chevron transferred its interest, constituted a continuing tort. Consequently, according to G&M, its suit is timely.

Under Louisiana law, "[a] trespass occurs when there is an unlawful physical invasion of the property or possession of another person." *See LaCombe v. Carter*, 975 So. 2d 687, 689 (La. Ct. App. 2008); *see also Corbello v. Iowa Prod.*, 850 So. 2d 686, 709 (La. 2003) (holding lessee who remains on property after expiration of lease commits trespass). An action in trespass "is subject to the

3

one-year liberative prescription of [Louisiana Civil Code Articles] 3492 and 3493," *Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 1002 (La. 2010). Under the "continuing tort doctrine," however, "when tortious conduct and resulting damages are of a continuing nature, prescription does not begin to run until the conduct causing the damage is abated." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000) (citing *Doe v. Doe*, 671 So. 2d 466, 469 (La. Ct. App. 1995)).

"A continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant." *Crump v. Sabine River Auth.*, 737 So. 2d 720, 728 (La. 1999). "A continuous trespass is a continuous tort . . . ." *Hogg*, 45 So. 3d at 1003. "To determine whether a trespass is continuous, a court must engage in the same inquiry used to determine the existence of a continuing tort; i.e., the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates . . . ." *Id.* at 1003-04. "[W]hen the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated." *Bustamento v. Tucker*, 607 So. 2d 532, 542 (La. 1992).

Putting aside the issue of whether sufficient facts exist in the record to find Chevron's trespass was continued by the alleged tortious acts of BP, a separate defendant,[1] any tort committed by BP after acquiring a co-ownership

---

[1] In contrast to G&M's assertion, the district court did not find that Chevron's initial trespass continued through its cessation of activities on the Tract and the transfer of its interest in the pumping station to BP. The district court simply did not address the question because it found that any trespass committed by Chevron ceased, at the latest, on the day Chevron acquired a co-ownership interest in the Tract.

4

interest in the Tract was not "of the same nature" as the initial trespass committed by Chevron. *See Bustamento*, 607 So. 2d at 542. Chevron's trespass consisted of its unlawful presence on the Tract after the expiration of the servitude. Once Chevron acquired an undivided ownership interest in the Tract, it acquired the right to be present on the Tract and, thus, could no longer commit such trespass. *See* LA. CIV. CODE ANN. art. 802 (2008) ("[A] co-owner is entitled to use the thing held in indivision according to its destination . . . .").

G&M nevertheless argues that BP's failure to account for profits from the Tract is in the nature of a trespass, and thus continued Chevron's trespass. G&M's reliance on *Cotten v. Christen*, 34 So. 597 (La. 1903), however, is misplaced. In that case, the Louisiana Supreme Court held that the cutting of timber by one co-owner, without the permission of the other co-owner, could "be stopped by injunction, for the act is in the nature of a trespass . . . ." *See id.* at 447. The Louisiana Supreme Court, however, later clarified the meaning of *Cotten*. In *Stinson v. Marston*, 169 So. 436 (La. 1936), the Louisiana Supreme Court recognized *Cotten* as applying to actions "constitut[ing] waste," allowing an injunction to issue where it is necessary to enforce a co-owner's right to "see that the property is preserved or maintained without deterioration." *See id.* at 439; *see also LeBlanc v. Scurto*, 173 So. 2d 322, 324 (La. Ct. App. 1965) (interpreting *Cotten* to apply to waste actions; upholding injunction issued to prevent one co-owner from blocking access to alley by other co-owner on ground it constitutes "a waste"). Indeed, *Stinson* noted that "[i]njunctions have been granted [against co-owners] only in cases where the cutting of timber will change the character of the place and amount to waste; or where the property has been destined for use as a plantation and the drilling of an oil well would have been an innovation and the draining of oil would constitute waste." *See* 169 So. at 439. Where such actions were not at issue, *Stinson* affirmed that "[e]very co-owner has the right to insist upon the use of the entire property." *See id.* In

sum, *Cotten* simply cannot be read to state that every transgression of one co-owner against another, including a failure to account profits not otherwise constituting waste, is an act of trespass. Instead, it applies only to those transgressions which constitute waste, and thus, like trespass, warrant injunctive relief.

Further, regardless of whether Louisiana courts label the failure of one co-owner to account to other co-owners a "trespass," Louisiana courts have not emphasized the tort's label in determining whether it constitutes a continuing tort. Rather, the courts have looked to the duty involved and the conduct injurious to that duty. *See Crump*, 737 So. 2d at 729 n.7 (La. 1999) (requiring "the operating cause of the injury be a continuous one" and "a continuous duty owed to the plaintiff and a continuing breach of that duty"; holding tortious construction of canal, cutting plaintiff's access to a lake, was not continued by defendant's subsequent tortious promises to resolve the issue; finding breach of promises were not operating cause of plaintiff's initial injury).

Here, the duties and conduct giving rise to G&M's injuries are not of sufficiently similar nature as to be continuous. After the expiration of the servitude and prior to acquiring its ownership interest, Chevron owed a duty to G&M to not trespass, and the "operating cause of the injury" consisted merely of Chevron's presence on the Tract without the permission of the Tract's owners. Once Chevron acquired a co-ownership interest, however, Chevron owed no such duty, and such conduct was no longer tortious, as Chevron had "the right to insist upon the use of the entire property." *See Stinson*, 169 So. at 375; *see also* LA. CIV. CODE ANN. art. 802; *Juneau v. Laborde*, 82 So. 2d 693, 695 (La. 1955) (finding defendant "was never a trespasser but a co-owner of the property with plaintiffs").

In contrast, BP's alleged tortious activity, arising after it acquired its ownership interest in the Tract, consisted of its failure to fulfill its duty to "share

6

the fruits and products of the thing held in indivision in proportion to [its] ownership." *See* LA. CIV. CODE ANN. art. 798 (2008). As Chevron was not a co-owner of the Tract while it operated the pumping station, Chevron owed no such duty to account to the Tract's co-owners. Consequently, the duty owed by BP was not the same as the duty owed by Chevron, and the injurious conduct was incomparable. Unlike cases where a course of conduct was found to constitute a single continuing tort, *see McDaniels v. Allison*, 708 So. 2d 418, 418 (La. 1998) (finding prescription suspended on continuing tort theory where plaintiff's child exposed to lead in paint of series of homes by solidary liable defendants); *Di Carlo v. Laundry & Dry Cleaning Serv.*, 152 So. 327, 329 (La. 1933) (holding defendant's continued operation of faulty dry cleaning equipment, which caused damaging vibrations to plaintiff's home, constituted continuing tort); *Wilson v. Hartzman*, 373 So. 2d 204, 207 (La. Ct. App. 1979) (finding employer's continued failure to remove employee from dangerous work environment, after repeated promises to do so, constituted continuing tort), the record here indicates no similar set of uniform conduct in breach of a single continuous duty.

Accordingly, Chevron's initial trespass did not continue after Chevron and BP obtained a co-ownership interest in the Tract, and, consequently, the prescription period on G&M's claim for trespass against Chevron has run.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.