ASHLEY CAROLLO     *     NO. 2024-CA-0038

VERSUS     *

TULANE UNIVERSITY     *     COURT OF APPEAL

    *     FOURTH CIRCUIT

    *     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-01437, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge Rachael D. Johnson)

Douglas M. Schmidt
Sylvia C. Cabiran
DOUG SCHMIDT, A.P.L.C.
335 City Park Avenue
New Orleans, LA 70119

        COUNSEL FOR PLAINTIFF/APPELLANT

Rebecca Sha
Clerc Cooper
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130--6534

        COUNSEL FOR DEFENDANT/APPELLEE

                      **AFFIRMED**
                      **January 9, 2025**

RDJ
RML
TGC

Appellant, Ashley Carollo ("Ms. Carollo"), appeals the trial court's October 4, 2023 judgment granting Appellee's, Tulane University's ("Tulane"), exceptions of prescription and no cause of action. For the following reasons, we affirm the trial court's ruling.

### FACTS AND PROCEDURAL HISTORY

On January 9, 2021, Ms. Carollo attended swim practice as a member of Tulane's Swim and Dive team at the University of New Orleans Natatorium. During practice, the assistant coach for the Swim and Dive team instructed Ms. Carollo and other team members to perform a backstroke exercise that involved landing on a yoga mat placed on the surface of the pool. Before performing this exercise, Ms. Carollo expressed concern to her assistant coach, telling him that she did not want to do the exercise. The assistant coach instructed Ms. Carollo to perform the exercise anyway. Under the assistant coach's instruction, Ms. Carollo performed the exercise, which resulted in her body striking the yoga mat. Immediately afterwards, Ms. Carollo told her assistant coach that she had severe pain in her head, she did not feel right, and she was disoriented. The assistant coach instructed Ms. Carollo and the swim team to continue practicing "swimming

1

starts" over the next forty-five minutes. After practice, the team took a forty-five minute bus ride back to Tulane's campus. During that ride, Ms. Carollo said she could barely keep her eyes open. Once she arrived back at Tulane's campus, Ms. Carollo went to the athletic trainer and reported the incident from practice. The athletic trainer gave Ms. Carollo a concussion symptom checklist, which resulted in her scoring thirty-nine points above her baseline with errors in balance. The athletic trainer recommended that Ms. Carollo rest.

On January 12, 2021, Ms. Carollo was treated by Dr. Gregory Stewart ("Dr. Stewart") at the Tulane Institute for Sports Medicine. Dr. Stewart informed Ms. Carollo that she had a concussion, but she could return to swim practice on January 13, 2021. After three weeks with no improvement, Dr. Stewart sent Ms. Carollo for an MRI. When Ms. Carollo asked for an analysis of her MRI results, Dr. Stewart stated that "You have a brain in there", refused to discuss the results any further, and then told her that she could return to practice. Ms. Carollo continued to experience migraines and headaches throughout her 2021 spring semester at Tulane. On July 30, 2021, Ms. Carollo suffered another head-related injury during a swim meet when she was kicked in the head.

On August 5, 2021, Dr. Nicole Reams ("Dr. Reams") of Northshore University Health System, Department of Neurology in Glenview, Illinois, examined Ms. Carollo. During her visit with Dr. Reams, Ms. Carollo complained of constant headaches, head pressure, nausea with activity, car sickness, and migraine headaches. Dr. Reams informed Ms. Carollo about the national standard for concussion protocol and told her that Dr. Stewart did not provide an acceptable standard of care when treating Ms. Carollo in January 2021. In August 2022, Ms. Carollo filed a medical review panel request against Dr. Stewart, but the review

was invalid and without effect because Ms. Carollo failed to remit the $100 filing fee. Since October 2022, Ms. Carollo has been receiving treatment from the LA Health Solutions Neurology facility.

Ms. Carollo filed her initial petition for damages against Tulane on February 17, 2023, and an amended petition on June 19, 2023. Ms. Carollo alleged that she sustained a traumatic brain injury along with spine and neck injuries. She asserted that Tulane committed gross negligence and that Tulane breached their contract pursuant to La. C.C. art. 2004. On May 17, 2023, Tulane filed exceptions of no cause of action and prescription. Tulane asserted that Ms. Carollo's gross negligence claims were prescribed pursuant to La. C.C. art. 3492 and that she cannot bring a breach of contract claim because she failed to allege any contractual provision that Tulane breached. On October 4, 2023, the district judge granted the exceptions of no cause of action and prescription, dismissing Ms. Carollo's breach of contract and gross negligence claims with prejudice. On October 13, 2023, Ms. Carollo filed a motion for new trial; and on October 23, 2023, she filed a notice of appeal.

On appeal, Ms. Carollo outlines five assignments of error: (1) the trial court erred in finding that the Concussion Form was not a contract; (2) The trial court erred in finding that because no term or condition under the contract was breached by Tulane, there was no basis for a contract claim; (3) the trial court erred in failing to see the difference between extinguishing obligations and creating obligations on forming a contract; (4) the trial court erred in not applying *contra non valentem*; and (5) the trial court erred in failing to consider the statute of limitations for contracts.

## JURISDICTION

This Court has held that we "have a duty to determine, *sua sponte*, whether the court has proper jurisdiction to consider the merits of an appeal filed in the court." *Schwarzenberger v. Louisiana State Univ. Health Scis. Ctr.-New Orleans*, 18-0812, p. 2 (La. App. 4 Cir. 1/9/19), 263 So. 3d 449, 451-52 (citing *Moon v. City of New Orleans*, 15-1092, 15-1093, p. 5 (La. App. 4 Cir. 3/16/16), 190 So. 3d 422, 425). La. C.C.P. art. 2087(D) provides that "[a]n order of appeal is premature if granted before the court disposes of all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the denial of such motions." La. C.C.P. art. 2087(D) is further expounded in *Merritt v. Dixon*, which states:

> It is well settled in Louisiana law that an appeal taken while a timely motion for a new trial is pending is premature and subject to dismissal because the motion suspends the operation of the final judgment being appealed. Where the trial court does not rule on the motion for new trial, the trial court is never divested of original jurisdiction, and the appellate court lacks jurisdiction to hear the appeal. Failure to raise the issue is not sufficient to confer jurisdiction on this court. The appellate court at any time and on its own motion, may dismiss an appeal where there is no right to appeal.

97-0781, p. 2 (La. App. 4 Cir. 5/28/97), 695 So. 2d 1095, 1096 (internal citations omitted).

In the case *sub judice*, Ms. Carollo filed a motion for new trial and ten days later filed a notice of appeal. According to the record, the motion for new trial was never denied or set for hearing, and it is unclear whether this motion is still pending. Therefore, this Court is faced with determining whether we have jurisdiction, as there is no disposition on the motion for new trial in the record. During oral argument in this Court, counsel for Ms. Carollo affirmatively stated that she "withdrew" her motion for new trial before filing her notice of appeal.

4

When asked about the Appellant's motion for new trial, Counsel for Tulane confirmed that it was his understanding that the motion was withdrawn and/or moot. Based on the representations of the parties, this Court will consider the filing and signing of notice of appeal as a withdrawal and/or waiver of Ms. Carollo's motion for new trial. As such, this Court has jurisdiction over this matter and will consider the merits of the appeal.

## DISCUSSION

***Exception of No Cause of Action***

The standard of review for an exception of no cause of action is *de novo*. Appellate courts review a judgment on an exception of no cause of action using the de novo standard of review "because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition." *Fink v. Bryant*, 01-0987, p. 4 (La. 11/28/01), 801 So. 2d 346, 349 (citing *City of New Orleans v. Board of Commissioners*, 93-0690, p. 28 (La. 7/5/94), 64 So. 2d 237, 253). "A peremptory exception of no cause of action questions whether the law extends a remedy against a defendant to anyone under the factual allegations of a petition." *White v. New Orleans Ctr. for Creative Arts*, 19-0213, 19-0214, p. 7 (La. App. 4 Cir. 9/25/19), 281 So. 3d 813, 819. "An exception of no cause of action tests 'the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.'" *Green v. Garcia-Victor,* 17-0695, p. 4 (La. App. 4 Cir. 5/16/18), 248 So. 3d 449, 453 (quoting *Moreno v. Entergy Corp.*, 2010-2281, p. 3 (La. 2/18/11), 62 So.3d 704, 706) (internal quotation omitted).

"In deciding an exception of no cause of action a court can consider only the petition, any amendments to the petition, and any documents attached to the

petition." *Green*, 17-0695, p. 5, 248 So. 3d at 453 (quoting *2400 Canal, LLC v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.*, 12-0220, p. 7 (La. App. 4 Cir. 11/7/12), 105 So. 3d 819, 825). "A court cannot consider assertions of fact referred to by the various counsel in their briefs that are not pled in the petition." *Id*. "The grant of the exception of no cause of action is proper when, assuming all well pleaded factual allegations of the petition and any annexed documents are true, the plaintiff is not entitled to the relief he seeks as a matter of law." *Id*. "[A]ny doubt must be resolved in the plaintiffs' favor." *Id*. Nevertheless, the mere conclusions of the plaintiff which are unsupported by facts do not set forth a cause of action. *Green*, 17-0695, p. 5, 248 So.3d at 453-54 (citing *831 Bartholomew Investments-A, L.L.C. v. Margulis*, 08-0559, p. 10 (La. App. 4 Cir. 9/2/09), 20 So. 3d 532, 538).

Ms. Carollo argues that the district court erred in failing to recognize that when she signed Tulane's Concussion Education Form ("concussion form") she was in fact signing a contract not to sue Tulane for any injuries she might sustain in the future. She argues that she could not negotiate the contract and she could not refuse to sign because her scholarship depended on her participation on the swim team. The district court declined to find that the concussion form is a contract because it does not outline any obligations for Tulane to perform. As such, the court sustained Tulane's exception of no cause of action.

Ms. Carollo asserts that a contract need not outline or name specific obligations to be done by a party, it merely must extinguish obligations. The concussion form states, in pertinent part:

> By signing this form, I acknowledge that I am aware that participation in intercollegiate Athletics at the institution involves the risk of personal injury and may result in a

6

head injury and/or concussion. I am also aware that if I sustain a concussion, I am at an increased risk for serious illness or injury, including death. I understand that if the institution believes, in its reasonable judgment, that I may have sustained a concussion or have concussion symptoms the institution may require evaluation to ensure my safety. After evaluation, the institution may withhold me from practice and/or competition until the signs and symptoms observed and reported are fully resolved. I have had a full opportunity to ask questions concerning concussions and discuss the risks associated with participation in intercollegiate athletics at the institution if I have a concussion and do not report it. I have been provided with education on head injuries and understand the importance of immediately reporting symptoms of a head injury/concussion to my athletic training staff. I understand that this release means that, among other things, I am giving up my right to sue the institution for any such losses, damages, injury, or costs that I may incur.

Ms. Carollo argues that when she signed the concussion form, Tulane's obligation to provide a reasonable duty of care to her was extinguished. In particular, she argues that Tulane extinguished its obligation to provide her with a reasonable duty of care by having her give up her right to sue. This argument is unpersuasive.

La. C.C. art. 1906 defines a contract as, "[a]n agreement by two or more parties whereby obligations are created, modified, or extinguished." Further, the elements for a valid contract are "(1) the capacity to contract; (2) mutual consent; (3) a certain object; and (4) lawful cause." *Fairbanks v. Tulane Univ.*, 98-1228, p. 4 (La. App. 4 Cir. 3/31/99), 731 So.2d 983, 986. "The essential elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages." *1100 South Jefferson Davis Parkway, LLC v. Williams*, 14-1326, p. 5 (La. App. 4 Cir. 5/20/15), 165 So. 3d 1211, 1216 (citing *Favrot v. Favrot*, 10-0986, pp. 14-15 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1108-09).

7

After reviewing the record, we find that the concussion form does not meet the requirements of a valid contract. The concussion form outlines the potential risks of participating in the sport and that Tulane will evaluate the student if they suspect the student has sustained a concussion. The form provides that Tulane can withhold the student if the student shows signs of a concussion. The form also has the student acknowledge the she has been educated about concussion protocol and that she is giving up her right to sue for any losses, damages, injuries, or costs related to a concussion injury. The concussion form does not outline any obligations either created, modified, or extinguished. Ms. Carollo asserts that giving up her right to sue is the extinguishing obligation that forms a contract. However, she fails to show how or where this obligation is established. We find that the district court did not err when it found that the concussion form is not a contract and sustained Tulane's exception of no cause of action.

### *Exception of Prescription*

An exception of prescription is a peremptory exception, which serves to "have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. Code Civ. Proc. art. 923. A trial court's factual findings are generally reviewed under the manifestly erroneous-clearly wrong standard of review when evidence is introduced on a prescription exception. *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 17-0413, p. 8 (La. App. 4 Cir. 11/15/17), 231 So. 3d 793, 800 (citation omitted). "When evidence is introduced but the case involves no dispute regarding material facts, only the determination of a legal issue, an appellate court must review the issue *de novo*, giving no deference to the trial court's legal determination." *Id.* The defendant asserting a peremptory exception of prescription

bears the burden of proof; however, when a plaintiff's claim is prescribed on the face of the petition, the burden shifts to the plaintiff to establish that his or her claim has not prescribed." *Id.*, p. 9, 231 So.3d at 800. The only evidence offered at the hearing was the concussion form, which was not offered to support or rebut the prescription arguments. Therefore, we apply a *de novo* standard of review.

"The nature of a cause of action must be determined before it can be decided which prescriptive term is applicable. The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action." *Albe v. City of New Orleans*, 14-0186, p. 8 (La. App. 4 Cir. 9/17/14), 150 So. 3d 361, 367 (internal citations omitted). In her petition, Ms. Carollo is seeking damages for injuries she sustained related to the swimming starts she was instructed to perform. The causes of action outlined in her petition and amending petition are delictual and subject to a one year prescriptive period. La. C.C. art. 3492.[1] Therefore, Ms. Carollo's claims are prescribed on its face. In an attempt to persuade the court that her claims are not prescribed, Ms. Carollo asserts that her claims are contractual and there is a ten-year prescriptive period for a breach of contract claim outlined in La. C.C. art. 3499.[2] After finding that Ms. Carollo does not have a cause of action for breach of contract, the district court sustained Tulane's exception of prescription finding that Ms. Carollo is asserting tort claims that should have been brought within the one-year prescriptive period outlined in La. C.C. art. 3492.

---

[1] La. C.C. art. 3492 states, in pertinent part, "[d]elictual actions are subject to a liberative prescription of one year." On July 1, 2024, La. C.C. art. 3492 was repealed in its entirety by Act No. 423, H.B. No. 315, § 2 and replaced with La C.C. art. 3493.11, which states in pertinent part, "[d]elictual actions are subject to a liberative prescription of two years." According to § 3 of Act 423, La C.C. art. 3493.11 is applied prospectively and applies to delictual actions arising after the effective date of this act. Due to the delictual happening previous to this act, the one year prescriptive period still applies.

[2] La. C.C. art. 3499 states: "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."

The latest possible date that Ms. Carollo could bring her tort claim was the date that she "had actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Dent v. Dent*, 16-1010, p. 3 (La. App. 4 Cir. 5/31/17), 221 So. 3d 194, 196 (Internal quotations omitted) (quoting *Bailey v. Khoury,* 04-0620, 04-0647, 04-0684, p. 10 (La. 1/20/05), 891 So. 2d 1268, 1276). According to the petition, Ms. Carollo discovered the full extent of her concussion-related injuries on August 5, 2021, but did not file suit until February 17, 2023, which is beyond the one-year prescriptive period outlined in La. C.C. art. 3492. We find that the district court properly sustained the exception of prescription.

### Contra non Valentem

In an effort to keep her cause of action viable, Ms. Carollo argues that the doctrine of *contra non valentem* should apply.

> The doctrine of *contra non valentem* provides that prescription does not run against one who is ignorant of the *facts* upon which their cause of action is based and applies an exception to the statutory prescriptive period where *in fact and for good cause* a plaintiff is *unable* to exercise his cause of action when it accrues.

*Eastin v. Entergy Corp.,* 03-1030, p. 6 (La. 2/6/04), 865 So. 2d 49, 55.

Ms. Carollo argues that this Court should apply the doctrine of *contra non valentem* to suspend prescription because she was unable to bring her action for various reasons. *Contra non valentem* has a high burden of proof and only applies when there are exceptional circumstances. *Marin v. Exxon Mobil Corp.*, 09-2368, p. 13 (La. 10/19/10), 48 So. 3d 234, 245 (internal citations omitted). The Louisiana Supreme Court has recognized the following four instances when *contra non valentem* applies and prescription does not run:

(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor [plaintiff] from suing or acting; (3) Where the debtor [defendant] himself has done some act effectually to prevent the creditor [plaintiff] from availing himself of his cause of action; and (4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. (This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned.)

*Chaney v. State Dep't of Health,* 432 So. 2d 256, 259 (La. 1983)

Ms. Carollo asserts that the second category of *contra non valentem* applies as there was in fact a condition coupled with a contract which prevented her from suing. Ms. Carollo claims that her not being able to sue Tulane is the condition coupled with her contract with Tulane that prevented her from acting. First, this court has already established Ms. Carollo did not have a contract with Tulane based on her signing the concussion form. Assuming arguendo that there was a contract between her and Tulane, the "condition" that Ms. Carollo asserts is the cause of her inability to sue is not the type of condition contemplated by the Louisiana Supreme Court in *Chaney.*

The conditions courts typically consider when applying the second category of *contra non valentem* are physical, mental, or a procedural status that prevents a person from initiating litigation. In *Bouterie v. Crane* the Louisiana Supreme Court found that *contra non valentem* applied where a minor was in the custody of the Department of Health and Human Resources ("DHHR") and it was unclear who was responsible for the preservation and enforcement of her right to sue. 616 So.

2d 657, 662 (La. 1993). The Supreme Court found that "equity demands the harshness of prescription should be suspended in this suit for damages for the sexual abuse of a minor through the period she was in the legal custody of DHHR". *Id*. In *Held v. State Farm Ins. Co.*, the Louisiana First Circuit Court of Appeal found that the second category of *contra non valentem* applied when "[p]laintiff's post-traumatic stress disorder prevented her from acting until she knew she was completely innocent and her father was solely responsible." 610 So. 2d 1017, 1020 (La. App. 1 Cir. 1992). Unlike the plaintiffs in the aforementioned cases, Ms. Carollo cannot point to any physical, mental, or procedural condition that prevented her from investigating her tort claims and filing suit against Tulane.

Ms. Carollo argues that the third category of *contra non valentem* applies because Tulane coerced her into signing the concussion form and the form prevented her from even considering filing a lawsuit within the prescription period. She also asserts that Tulane concealed, by ill practices or misrepresentation, that gross negligence was an exception to the contract. This argument is unpersuasive.

The third category of *contra non valentem* only applies when the following occurs: (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice, (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action, and (3) the plaintiff must have been reasonable in his or her inaction. *Marin v. Exxon Mobil Corp.,* 09-2368, p. 24 (La. 10/19/10), 48 So. 3d 234, 252 (internal citations omitted). In *Albe*, the Appellant was the class representative in a class action against the city and the contractor who installed traffic cameras. 14-0186, p. 1, 150 So. 3d at 363. The Appellant was issued delinquency notices for failing to pay fines and was threatened with jail time. *Id*. at p. 1, 150 So. 3d at 363-64. She

12

argued that the third category of *contra non valentem* was applicable because threats of possible jail time constituted fraud and prevented her from timely filing her suit. *Id.* at p. 10, 150 So. 3d at 368. This Court found her argument unpersuasive. The Court found that Appellant failed to show that Appellee did anything to prevent Appellant from pursuing her cause of action. *Id.* We apply the same reasoning here.

Although Ms. Carollo asserts that Tulane concealed the fact that gross negligence was a possible cause of action, there is nothing she can point to that supports her assertion that Tulane concealed any information. Had Ms. Carollo performed her own due diligence, she would have known that the she could bring her tort claim within the one-year prescriptive period. In *Chaney,* the Louisiana Supreme Court stated that *contra non valentem* does not protect the Plaintiff from ignorance of the law and that appears to be the case here. 432 So. 2d at 259. This Court has previously held that "ignorance of specific facts giving rise to a legal claim can prevent the running of prescription in certain circumstances, ignorance of the law does not." *Albe*, 14-0186, p. 14, 150 So. 3d at 370 (citing *Lieber v. State, Department of Transportation & Development*, 28,745, p. 12 (La. App. 2 Cir. 10/30/96); 682 So. 2d 1257, 1262). In *Albe*, Appellant asserted that Appellee prevented her from timely filing because she was given false information regarding the consequences of filing. 14-0186, pp. 1-2, 150 So. 3d at 364. However, this information **did not** pertain to the material facts that gave rise to her tort claim. *Id.* at pp. 13-14, 150 So. 3d at 370. This Court determined *contra non valentem* did not apply because the Appellant could have asserted her tort claim had there been reasonable diligence on her part and thus, Appellant's tort claim was prescribed. Similarly, Ms. Carollo knew the extent of her injuries on August 5, 2021, but did

13

not file suit until February 17, 2023. Ms. Carollo knew about her concussion related injuries but did not perform her due diligence within the prescriptive period to determine whether she could file suit. We find that the third category of *contra non valentem* does not apply.

## DECREE

For the foregoing reasons, we affirm the district court's October 4, 2023 judgment granting Tulane's exceptions of prescription and no cause of action.

**AFFIRMED**